2019 PA Super 167

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PI DELTA PSI, INC., | : | |
| | : | |
| Appellant. | : | No. 458 EDA 2018 |

Appeal from the Judgment of Sentence, January 8, 2018,
in the Court of Common Pleas of Monroe County,
Criminal Division at No(s): CP-45-CR-0002578-2015.


BEFORE: LAZARUS, J., KUNSELMAN, J., and COLINS, J.*

OPINION BY KUNSELMAN, J.: **FILED MAY 23, 2019**

## I. Introduction

Near the close of the 2013 fall semester, student members of Pi Delta Psi, Inc. traveled from their college campus in Manhattan to the Pocono Mountains. They rented a house to perform the final rites and rituals of their new-member program, as they had quietly done in previous semesters. This time, something went horribly wrong.

A ritual known as "The Crossing," a gauntlet where members tackle and body-slam associate members,[1] killed a freshman. The Commonwealth filed charges against the student members; certain national officers; and Pi Delta Psi, Inc., itself. A jury convicted the corporation of hazing, involuntary

---

[1] A.K.A. "pledges."


* Retired Senior Judge assigned to the Superior Court.

manslaughter, aggravated assault, conspiracy to commit aggravated assault, hindering apprehension, and conspiracy to hinder apprehension.[2]  The corporation now appeals from its judgment of sentence, imposing an aggregate of ten years of probation and fining it $112,500.00.  It raises many appellate issues, including new, constitutional theories regarding its Due Process rights.  As we will explain, none of its claims have merit.

However, the trial court imposed a probationary condition barring the corporation from conducting any business in Pennsylvania for a decade.  This Court can find nothing in our statutes or at common law that affords a trial court authority to outlaw a corporation from an entire state.  We therefore must vacate, *sua sponte*, that illegal sentence and remand for resentencing.

In all other respects, we affirm.


## II.    Factual Background

Pi Delta Psi, Inc. came into being on April 14, 1995, when its founders incorporated it as non-profit corporation[3] under New York law. They

_____

[2] 24 P.S. § 5353, 18 Pa.C.S.A. § 2504(a), 18 Pa.C.S.A. § 2702(a)(1), 18 Pa.C.S.A. § 903, 18 Pa.C.S.A. § 5105(a)(3), and 18 Pa.C.S.A. § (a)(5).

[3] As the corporation is a non-profit, we pause to consider our jurisdiction.

In civil matters involving non-profit corporations, this Court, applying 42 Pa.C.S.A. § 762(a)(5), has held "jurisdiction over this appeal properly lies with the Commonwealth Court, because [one of the parties] is a non-profit corporation." ***Zikria v. W. Pennsylvania Hosp.***, 668 A.2d 173, 173 (Pa. Super. 1995).  The instant appeal is a criminal matter, however, and we find

established it as a national, Asian-interest-based fraternal organization. Like most fraternities, the corporation has constituted subsidiaries of itself (a process known as "colonization") on various college and university campus throughout the United States.

The corporation developed, published, and directed a nation-wide, new-member-education program for would-be brothers in its "Pledge Manual." The new-member curriculum included physical rites and rituals.

In this case, the Baruch College Colony of Pi Delta Psi took its associate members to Pennsylvania for the final stages of the program. The members performed the Crossing Ritual quite brutally and caused the death of an associate member. Two other New York-based chapters of the corporation were also present at the hazing event. The Pennsylvania State University Chapter of Pi Delta Psi (the only functioning subsidiary in the Commonwealth) had no involvement with or knowledge of this incident.

_____

nothing in our case law specifically addressing which court has jurisdiction over it. Jurisdiction presents us with a purely legal issue, for which our standard of review is *de novo* and our scope of review is plenary; we "may consider the issue of jurisdiction *sua sponte*." ***Commonwealth v. Parker***, 173 A.3d 294, 296 (Pa. Super. 2017).

The Superior Court has appellate jurisdiction over any appeals not within the exclusive jurisdiction of either the Commonwealth Court or Supreme Court of Pennsylvania. ***See*** 42 Pa.C.S.A. § 742. After examining the statutes regarding the other appellate courts' jurisdiction (***See*** 42 Pa.C.S.A. §§ 722, 762), we determine that this case is properly before us.

The corporation, by and through its national president, directly participated in at least one new-member event of the Baruch Colony, although no national officers attended the Crossing. The national president (who is an alumnus member of Pi Delta Psi) also helped the student members and officers conceal the cause of death and the corporation's connection to it from investigators. He instructed the student members and officers to lie to police and to hide the fraternity's letters, heraldry, and regalia before officers searched the rented house.

Facing criminal homicide charges, members decided to cooperate with prosecutors and began to implicate the corporation. The Commonwealth eventually charged the corporation with a host of crimes, the most severe of which was murder of the third degree.[4] The jury acquitted the corporation of murder and voluntary manslaughter but convicted it on charges of involuntary manslaughter and many lesser offenses.

The trial court fined and sentenced the corporation to probation. The conditions of probation required the corporation to "pay all fines, restitution, and costs within five years;" to cease all "business within the Commonwealth during its period of probation, which shall include maintaining, creating, endorsing, or hosting any chapter, associate chapter, or colony at any college, university, or other institution of higher education, and hosting, convening, or attending any event or activity within the Commonwealth;" and to notify all

---

[4] 18 Pa.C.S.A. § 2502(c).

colleges and university with a Pi Delta Psi chapter or colony of its conviction and sentence.  N.T., 1/8/18, at 28 – 29.

The corporation timely appealed.

## III.  Analysis

The corporation raises ten appellate issues.  They are:

1. Did the trial court deprive the corporation of its constitutional rights to present its defense by excluding an expert opinion?

2. Did the trial court deprive the corporation of its constitutional rights to present its defense by excluding exhibits as irrelevant?

3. Did the trial court deprive the corporation of its constitutional rights to present its defense by curtailing cross-examination of a witness?

4. Did the trial court deprive the corporation of its constitutional rights to present its defense by refusing to grant "use immunity" to its co-defendants?

5. Did the trial court deprive the corporation of its constitutional rights to present its defense by impairing its closing argument?

6. Did the trial court prejudice the corporation by allowing the Commonwealth to call it "the fraternity?"

7. Did the verdict slip violate the Due Process Clauses of both constitutions, by shifting the burden of proof to the corporation when the word "Guilty" preceded "Not Guilty?"

8. Did the trial court violate the Due Process Clauses of both constitutions when it used the term "defendant" during jury instructions, rather than "the accused?"

9. Did the trial court err by refusing to give certain jury instructions the corporation requested?

> 10. Did the trial court err by refusing a curative instruction regarding the prosecutor's closing argument?

**See** Pi Delta Psi's Brief at 4-5.

We will address each of the corporation's claims of error in turn. After explaining why they are all waived or meritless, we will consider the legality of the corporation's probationary sentence.

*A.      The Exclusion of Expert Testimony*

First, the corporation claims the trial court deprived it of a fair trial by excluding certain expert testimony. The trial court prohibited David L. Westol, an expert on collegiate fraternities, from testifying that the corporation met the national standard of care by promulgating and enforcing an anti-hazing policy. The corporation argues that decision was incorrect.

Such an argument disregards our deferential standard of review for a trial court's evidentiary rulings. When reviewing a decision to admit or to exclude expert opinion testimony, we use an abuse-of-discretion standard. **See Commonwealth v. Powell**, 171 A.3d 294, 307 (Pa. Super. 2017), *appeal denied*, 183 A.3d 975 (Pa. 2018). Abuse of discretion only "occurs if the trial court renders a judgment that is manifestly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias or ill-will." **Hutchinson v. Penske Truck Leasing Co.**, 876 A.2d 978, 984 (Pa. Super. 2005). In other words, a reasonable judgment by

the trial court is not an abuse of discretion, even if this Court disagrees with that judgment.

Here, the corporation makes no argument that the trial court's decision to prohibit Mr. Westol from testifying about the standard of care was manifestly unreasonable. Nor does it identify which Rule of Evidence the trial court supposedly violated. The corporation merely contends the trial court's decision was incorrect and negatively impacted its defensive strategy. The corporation's assertion of an incorrect judgment does not persuade us that the trial court abused its discretion.

The trial court, in preventing Mr. Westol from opining for the jury that the corporation's anti-hazing policy and training met Greek Life's national standard of care, explained its ruling as follows:

> An opinion is not excludable merely because it embraces an ultimate issue. PA R.E. 704. An expert opinion that embraces an ultimate issue may be objectionable on other grounds, however, as the Pennsylvania Superior Court observed:
>
>> Pennsylvania law allows expert opinion testimony on the ultimate issue. As with lay opinions, the trial judge has discretion to admit or exclude expert opinions on the ultimate issue depending on the helpfulness of the testimony versus its potential to cause confusion or prejudice.
>
> **McManamom v. Washko**, 906 A.2d 1259, 1278-1279 (Pa. Super. 2006).
>
> *     *     *     *     *
>
> As to Mr. Westol's opinion that "[the corporation] acted within the standard of care, custom, and practice within the community of Greek-lettered organizations" and that it "was

> not negligent nor did it violate any duty of care towards [the victim]," Mr. Westol did not testify using legal terms of art, i.e., "standard of care," "negligence," etc., as he did in his Report. From reading the Report, it is not clear that he makes these assertions independent of an opinion that [the corporation's] conduct was consistent with the standards within Greek-lettered organizations.
>
> Whether [the corporation] acted in conformity with the standards of conduct or care found in other [Greek-lettered organizations] is of no relevance in a criminal case. It will not help jurors understand the evidence or determine a fact in issue. For each of these reasons, Mr. Westol's opinion that "[the corporation] acted within the standard of care, custom, and practice within the community of Greek-lettered organizations" and that it "was not negligent nor did it violate any duty of care towards [the victim]," is irrelevant and inadmissible.

Trial Court Opinion, 11/8/17, at 29, 35-36 (some citations and punctuation omitted).

The trial court's opinion rejecting Mr. Westol's opinion testimony on the national standard of care is firmly rooted in the Rules of Evidence, the criminal law, and our appellate precedents. The court's analysis is quite reasonable and does not misapply or override the law.

Because the prosecution's theory as to this corporation's guilt rested entirely upon its vicarious liability for its agents' misconduct, we cannot say that the trial court abused its discretion in excluding the expert's opinion on the standard of care. "Corporations are criminally accountable for the actions of a 'high managerial agent' who commits a wrongdoing in the scope of his office. This corporate accountability is based upon a simple principal/agency relationship and not upon a corporation affirming the officer's act."

*Commonwealth v. Penn Valley Resorts, Inc.*, 494 A.2d 1139, 1142 (Pa. Super. 1985) (interpreting and applying 18 Pa.C.S.A. § 307).

Thus, the instant corporation would be vicariously liable for everything that the colony's officers and the national president did in furtherance of the new-member-education program and its initiations rituals, regardless of whether the corporation met the national standard of care by disavowing hazing. To the extent that the local and national officers committed any crimes in causing the death of this associate member, so did the corporation, i.e., the principle whose interests all of the agents/officers were pursuing when they physically assaulted the freshman and tried to hide their crimes.

Even if the corporation's anti-hazing policy and training met the national standard of care for all Greek-lettered organizations, meeting industry standards will not excuse involuntary manslaughter, hazing, and the other crimes for which the jury convicted this corporation, when 'high managerial agents' committed those crimes specifically as part of the rites and rituals for imitation into the corporation's membership. Moreover, if the officers of the Baruch Colony and the national president met the national standard of care and this associate member died anyway, then Greek Life certainly needs to raise its national standards. If, on the other hand, their conduct did not meet the national standard of care by their conduct, then the corporation, vicariously speaking, did not meet it, as well. Either way, the opinion testimony that the corporation met the national standard of care was of no relevance to the ultimate issue of the corporation's criminal culpability.

Thus, the trial court was well within its sphere of discretion in deeming Mr. Westol's opinion on the corporation's conformity to the national standard of care irrelevant in a criminal trial. Accordingly, we dismiss the first appellate issue as meritless.

B.    *The Exclusion of Certain Exhibits*

As its second appellate issue, the corporation argues that the trial court erroneously excluded two exhibits from evidence. The first piece of excluded evidence was a letter to the prosecutors, which the corporation claims would show that the student members performed the Crossing in a manner "beyond the normal Rituals." Pi Delta Psi's Brief at 14 (some punctuation omitted). The other piece of evidence was "an excerpt from Daniel Lee's proper statement transcript showing the instructions by the prosecutors to the witness . . . ." *Id.* at 15.

The corporation cites no case law or authority to support its contention that the exhibits were admissible. ***See id.*** 14 – 15. It simply offers bald assertions of error without any basis in law or citations to the record.

The Pennsylvania Rules of Appellate Procedure do not permit conclusory arguments. Each distinct issue in the argument section of a brief must, at a minimum, contain "citations of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). When a party "cites no pertinent authority to substantiate [its] claim . . . appellant's issue is waived." ***Commonwealth v. Simmons***, 56 A.3d 1280, 1286 (Pa. Super. 2012), *affirmed*, 91 A.3d 102 (Pa. 2014).

- 10 -

The corporation's conclusory argument leads to the waiver of this issue.

C.    *The Cross-Examination of Sheldon Wong*

The corporation asserts that the trial court prohibited it from completing its cross-examination of Sheldon Wong.  It does not, however, claim that this was an error of law or an abuse of discretion, much less explain why reversal is in order.  The corporation's brief only summarizes and editorializes on Wong's testimony.  **See** Pi Delta Psi's Brief at 14.  Because we discern no argument from the corporation on this issue and it has, again, failed to cite legal authority for its position, we dismiss this issues as waived.  **See** Pa.R.A.P. 2119(a); **Simmons**, **supra**.

D.    *The Co-Defendants' Privileges against Self-Incrimination*

The corporation's fourth appellate issue seeks to establish a new, state-constitutional right.  Specifically, it requests judicially imposed "use immunity" for its 34 co-defendants – the student members who performed the physical hazing.  The corporation only called Jimmie Mei.  It claims that its attempt to examine Mei illustrates what would have transpired, if it had also called the other 33 co-defendants.

Mei asserted his Fifth Amendment privilege against self-incrimination. The Commonwealth and the trial court both declined to immunize Mei from prosecution.  Next, the corporation asked the trial court to immunize Mei from his testimony being used against him – hence, "use immunity."  The trial court

refused. According to the corporation, this refusal deprived it of its rights under the Constitution of the Commonwealth of Pennsylvania. *See* Pi Delta Psi's Brief at 18.

In its appellate brief, the corporation quotes ***Government of the Virgin Islands v. Smith***, 615 F.2d 964 (3rd Cir. 1980), *overruled by* ***United States v. Quinn***, 728 F.3d 243 (3rd Cir. 2013) (*en banc*), for the proposition that a trial court may grant use immunity to co-defendant witnesses. After admitting ***Smith*** is no longer the law of the Third Circuit, the corporation argues that "its reasoning holds true for the Pennsylvania constitutional trial right to present a defense." Pi Delta Psi's Brief at 17. The corporation would have us graft ***Smith*** onto the Constitution of the Commonwealth of Pennsylvania. ***See id.***

The record reveals, however, that the corporation did not make this argument to the trial court. Defense counsel mentioned neither the state constitution nor ***Smith*** at trial. He only sought use immunity (at the time, calling it "limited immunity") as an afterthought, once the court and the Commonwealth denied his original request to immunize Mei completely. ***See*** N.T., 11/17/17, at 144.

"Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). We have said "issues, even those of constitutional dimension, are waived if not raised in the trial court. A new and different theory of relief may not be successfully advanced for the

first time on appeal." ***Commonwealth v. Cline***, 177 A.3d 922, 927 (Pa. Super. 2017), ***appeal denied***, 187 A.3d 210 (Pa. 2018).

The corporation did not argue to the trial court that its use-immunity request was based upon a novel interpretation of Article I of the Constitution of the Commonwealth of Pennsylvania. Accordingly, we dismiss its fourth appellate issue as waived.

E.      *Prohibition on Use of Metaphorical Shirts at Closing Argument*

For its fifth claim of error, the corporation argues the trial court impaired its closing argument by forbidding the display of empty shirts to the jury. It asserts the "trial court abused its discretion in denying the defendant's use of images of metaphorical shirts during closing arguments . . . The metaphorical shirts were intended to focus the jury on the lethal tacklers and their leader, Sheldon Wong. The court deprived the defendant of this valuable tool." Pi Delta Psi's Brief at 15. The corporation then quotes two appellate cases, but it does not analogize those precedents to its own or claim that the trial court violated them. It simply states, "[a] new trial should be granted." ***Id.*** at 16.

We cannot discern the point of this argument. When an appellant's argument is underdeveloped, we may not supply it with a better one. In such situations, "[w]e shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument; instead, we will deem the issue to be waived." ***Commonwealth v. Cannavo***, 199 A.3d 1282,

1289 (Pa. Super. 2018), *reargument denied* (Jan. 29, 2019); **see also** Pa.R.A.P. 2119.

Because the corporation has failed to craft a discernable, legal argument in support of this claim, we dismiss it as waived.[5]

F.    *The Commonwealth's References to The Corporation as "The Fraternity"*

Next, the corporation claims the trial court should have prohibited the prosecution for calling it "the fraternity" during trial.  It believes that label confused the jurors by combining the corporation with its 34 co-defendants – i.e., its members and officers.  The corporation asserts the trial court "had the authority pursuant to the Pennsylvania Rules of Evidence to control the mode of interrogating witnesses at trial in reference to 'the fraternity.'"  **Id.** (citing Pa.R.A.P. 611(a)).

While that statement is correct – the trial court had such authority – it was under no obligation to exercise its authority as the corporation desired. We review application of Pa.R.A.P. 611 deferentially and only reverse if there was a "clear abuse of discretion or error of law." **Commonwealth v. Boxley**, 838 A.2d 608, 615 (Pa. 2003).

Pennsylvania Rule of Evidence 611(a) provides:

---

[5] Additionally, we note that a trial court has great discretion in limiting closing arguments. **See, e.g., Commonwealth v. Chamberlain**, 612 A.3d 107 (Pa. 2011).  Here, the corporation has not explained how the trial court's decision constituted to an abuse of discretion.  Thus, even if this Court were to reach the merits, we would find no grounds for reversal.

**(a) Control by the Court; Purposes.** The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to:

(1)  make those procedures effective for determining the truth;

(2)  avoid wasting time; and

(3)  protect witnesses from harassment or undue embarrassment.

Pa.R.A.P. 611(a).

The corporation does not claim the trial court either abused its discretion or misinterpreted Rule 611. The corporation simply expresses its disagreement with how the trial court chose to manage the questioning of witnesses and their replies. As such, its argument disregards our deferential standard of review and fails to persuade us that an abuse of discretion occurred.

We conclude this issue is meritless.

*G.   The Verdict Slip*

For its seventh appellate issue, the corporation asserts a novel theory – namely, that the trial court's listing of "Guilty" before "Not Guilty" on the verdict slip violated both constitutions. It claims (without reference to any source) that, historically, verdict slips were blank, and jurors handwrote the words "Guilty" or "Not Guilty" after each offense.

In the corporation's view, the multiple-choice-style verdict slip violates the constitutional presumption of innocence. It fears that this tricked the

jurors into subconsciously thinking the corporation had to prove its own innocence. To make this connection, the corporation cites and quotes articles from *The Legal Intelligencer*, *The Philadelphia Inquirer*, *The Tribune Democrat*, *The Star-Ledger*, websites seeking to abolish judicial elections, and sociological studies correlating ballot position to election results. The only law the corporation cites is ***Akins v. Secretary of State***, 904 A.2d 702 (N.H. 2006) (declaring a New Hampshire statute unconstitutional, because it listed political candidates on the ballot in alphabetical order and so irrationally favored those with certain names over others).

The Commonwealth responds that the corporation has waived this claim by failing to cite any authority. It also argues that we have previously rejected this constitutional theory in ***Commonwealth v. Selinski***, 18 A.3d 1229 (Pa. Super. 2011), *partially vacated on other grounds*, 100 A.3d 206 (Pa. 2014). Finally, the Commonwealth notes that the trial court gave the standard jury instruction on the presumption of innocence, thereby negating the corporation's theory of a Due Process violation.

We disagree with the Commonwealth as to waiver. Its argument places the corporation in a catch-22. The corporation advances a new, constitutional theory to expand Due Process protections under both constitutions. Thus, it cannot possibly cite precedents that support its reading of the Due Process Clauses, because no court has yet concluded that such protections exist. That fact may favor the Commonwealth on the merits, but it is hardly grounds for

waiver. Otherwise, no party could ever frame a new theory of constitutional jurisprudence for judicial review.

The Commonwealth also erroneously contends that this Court disposed of the corporation's claim in **Selinski**, **supra**. There, we found waiver of this constitutional question due to an underdeveloped appellate argument. While the panel proceeded to offer *dictum* that, "even if Appellant had not waived the issue, his argument is without merit," that observation was not precedential. **Id.** at 1235. Thus, **Selinski** does not control the merits of this issue.

We therefore address those merits now. In reviewing a constitutional claim, we face a pure question of law, "for which our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Veon**, 109 A.3d 754, 763 (Pa. Super. 2015), *vacated on other grounds*, 150 A.3d 435 (Pa. 2016).

The Fourteenth Amendment to the Constitution of the United States dictates that "No state shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." Pennsylvania courts treat Article I, § 1 as the equivalent of the Fourteenth Amendment's Due Process Clause. **See, e.g., Johnson v. Allegheny Intermediate Unit**, 59 A.3d 10, 20 (Pa. Cmwlth. 2012) (stating that, when applying Article I, § 1, a "due process inquiry must take place."). The corporation does not assert any greater rights under Article I, § 1 than under the Fourteenth Amendment. Moreover, the

Supreme Court of Pennsylvania has recently said that, under the Fourteenth Amendment and Article I, § 1:

> the amount of process which is due in a particular case is determined by application of a test which considers three factors: (1) the private interest affected by the governmental action; (2) the risk of an erroneous deprivation together with the value of additional or substitute safeguards; and (3) the state interest involved, including the administrative burden the additional or substitute procedural requirements would impose on the state.

*In re Fortieth Statewide Investigating Grand Jury*, 197 A.3d 712, 717 (Pa. 2018) (citing *Mathews v. Eldridge*, 424 U.S. 319, (1976) and *Bundy v. Wetzel*, 184 A.3d 551 (Pa. 2018)) (quotation marks omitted). We address the corporation's federal and state constitutional claim simultaneously.

The parties have not directly addressed their arguments to the three-part, *Mathews/Bundy* test, but they have offered theories that fall roughly within its parameters. For instance, the corporation claims that (1) the "Guilty"-before-"Not-Guilty" verdict slip violated its fundamental right to be presumed innocent; (2) scholarly research ties primacy of place on a ballot to an increased chance of winning, which the corporation relates to the jury system; and (3) amending the verdict slip would cost the Commonwealth nothing. *See* Pi Delta Psi's Brief at 25.

The Commonwealth attacks the corporation's theory on the second prong of the test. In the Commonwealth's view, because the trial court instructed the jury on burden of proof and presumption of innocence, there

was no procedural deprivation of the corporation's right to be presumed innocent. The Commonwealth also emphasizes that we legally must presume that the jury followed those instructions without any evidence to contrary.

That the corporation had a right to be presumed innocent at trial "is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin v. United States*, 156 U.S. 432, 453, 15 S. Ct. 394, 403, 39 L. Ed. 481 (1895). The corporation claims the "Guilty"-before-"Not-Guilty" verdict slip jeopardized its most fundamental right of criminal procedure. It therefore satisfies the first prong of the *Mathews/Bundy* test.

We also agree with the corporation that it would cost trial courts nothing to list "Not Guilty" before "Guilty" on verdict slips. The Commonwealth has not disputed this, nor has it identified any state interest for listing "Guilty" first. We find that the third prong favors the corporation's theory as well.

However, the corporation's Due Process claim falters at the second step of the *Mathews/Bundy* test. We are unpersuaded that the verdict slip deprived the corporation of its right to be presumed innocent. Uninformed electors, who mindlessly vote for the first name on a ballot, correlate poorly to well-informed jurors, who collectively deliberate before reaching a verdict.

While the sociological studies and legal articles that the corporation cites are worrisome commentaries on our democracy, they, fortunately, are not indicative of how juries function. Unlike voters who may simply touch the first name on a screen in a voting booth, the twelve jurors who tried the

corporation were oath-bound to follow the law and instructions of a learned trial judge, who well and fully instructed them on their duties and the law.

As the Commonwealth rightly notes and the **Selinski** Court said, "the trial court instructed the jury on the presumption of innocence and the Commonwealth's burden of proof, following the language of Pennsylvania Standard Jury Instruction (Criminal) 7.01." **Id.** at 1235. We find this *dicta* persuasive and adopt it into our analysis.

And, regarding the case at bar, the jurors were fully informed about the corporation's role in the hazing death. They sat through a week-long trial, heard testimony of witnesses, and reviewed copious physical evidence. Thus, these jurors knew far more about their decision and its implications than electors who arbitrarily vote for the first name they see. Additionally, the margins of error in close elections, to which the corporation's studies referred, do not occur in a criminal-jury trial. Criminal juries must reach a unanimous decision.

The corporation's jurors clearly understood their role and legal obligations. They did not, as the corporation suggests, simply check-off the first box of "Guilty" and return to the courtroom. Had they done so, the jurors would have convicted the corporation of the first charge on the verdict slip – namely, murder of the third degree. But, as the verdict slip indicates, they did not. **See** Verdict at 1. Instead, the jurors left the first two charges blank, followed their instructions, proceeded to the subsequent offenses, and convicted the corporation of the third charge – involuntary manslaughter. **See**

*id.* This jury demonstrated that a "Guilty"-before-"Not-Guilty" verdict slip did not undermine the presumption of innocence.

Finally, there is no Rule of Criminal Procedure regarding the format of a verdict slip. Any such mandate, if appropriate, must come from the Supreme Court of Pennsylvania. "The Supreme Court shall have the power to prescribe general rules governing practice, procedure, and the conduct of all courts . . . ." Pa. Const. Article V, § 10(c). If we created the rule the corporation requests, we would usurp the power of the Supreme Court. The criminal-defense bar may suggest this new rule to the Supreme Court's Criminal Procedural Rules Committee, should it so desire. We, however, may not create it as a constitutionally enshrined right.

Because we conclude that the verdict slip did not infringe upon the corporation's right of presumed innocence, no Due Process violation occurred, and no appellate relief is due.

*H. The Trial Court's Use of the Word "Defendant"*

The corporation raises another, novel, constitutional theory. It claims that the trial court violated its Due Process rights by referring to it as the "defendant" rather than the "accused."

The corporation again relies upon its right of presumed innocence and claims a person "can be accused without being a defendant, that is, an accused can be simply 'blamed.' . . . a defendant is always an accused, but an accused is not even constitutionally obliged to defend." Pi Delta Psi Brief at 27. The

corporation thinks the term "defendant" carries a negative connotation that it committed a crime.[6]

The Commonwealth again argues for waiver, on the grounds that the corporation cited no law for its constitutional claim. We again refuse to find waiver for the reasons above.

On the merits, the corporation reasserts its fundamental right of the presumption of innocence. Thus, it satisfies part-one of the ***Mathews/Bundy*** test. ***See also in re Fortieth Grand Jury***, ***supra***.

Also, the corporation proposes a simple remedy – namely, that trial courts call defendants "the accused" during the jury instructions. The Commonwealth neither argues this is impractical nor that there is a state interest in referring to defendants as "defendants." The corporation thus satisfied the third part of the test.

But, again, the corporation's theory cannot meet the second prong of ***Mathews/Bundy***. Requiring all trial judges to call defendants "the accused" is a cure in search of an illness. While it is logically true that all accused are not defendants and all defendants are accused, the corporation fails to connect that tautology with an undermining of the presumption of innocence. Thus, the corporation has failed to demonstrate how the trial court's verbiage

---

[6] We discussed our scope and standard of review and the test for a due process challenge in the preceding subsection on the jury-slip issue. **See** Subsection G., ***supra***. We therefore need not restate them in this subsection.

deprived it of any right, beyond its mere speculative belief that some harm may have occurred.

And, as with the verdict slip above, we again note that the trial court fully instructed the jury on the presumption of innocence, the jury acquitted the then-accused (now-convicted) corporation of the Commonwealth's most serious accusations, and no Rule of Criminal Procedure or any Standard Jury Instruction compels the result the corporation seeks. Accordingly, for all of the reasons above, we again perceive no Due Process violation. Any request to amend the Rules of Criminal Procedure or the Standard Jury Instruction should be directed to the appropriate committees of the Supreme Court of Pennsylvania.

Because the corporation has not shown how the trial court's use of the word "defendant" infringed its constitutional rights, we dismiss this appellate issue as meritless.

## I.    *Jury Instructions*

The corporation, for its ninth claim of error, provides a list of jury instructions it desired the trial court to give. It believes these instructions were necessary to protect its freedom of association under the First Amendment to the Constitution of the United States.

The three paragraphs of argument on this issue are muddled, at best. They do not reference anything of record to demonstrate why the requested

jury instructions were, as the corporation puts it, "crucial." Pi Delta Psi's Brief at 28. Again, conclusory arguments are not viable under Pa.R.A.P. 2119.

The corporation has waived this claim.

### J. The Prosecution's Closing Argument

For its final issue, the corporation alleges the trial court failed to correct the prosecution's appeal to passion and sympathy. This argument is even less developed than the jury-instruction claim above, in that it lacks any citation to legal authority and is wholly conclusory. Accordingly, we also dismiss it as waived. ***See*** Pa.R.A.P. 2119.

### K. The Legality of the Corporation's Sentence

Having disposed of the corporation's ten appellate issues, we now raise, *sua sponte*, an eleventh. We question whether the trial court had authority under Pennsylvania's criminal law to impose a condition of probation that, practically speaking, exiles this corporation from Pennsylvania for ten years.[7] The issue of "whether the trial court possessed the authority to impose a particular sentence implicates the legality of the sentence . . . ." ***Commonwealth v. Wilson***, 11 A.3d 519, 525 (Pa. Super. 2010) (*en banc*), *vacated on other grounds*, 67 A.3d 736 (Pa. 2013).

---

[7] The Commonwealth recommended an exile of 20 years at sentencing. ***See*** Commonwealth's Sentencing Memorandum at 2-3.

The legality of a criminal sentence is non-waivable, and this Court may "raise and review an illegal sentence *sua sponte*." **Commonwealth v. Muhammed**, 992 A.2d 897, 903 (Pa. Super. 2010). Because the legality of a sentence presents a pure question of a law, our scope of review is plenary, and our standard of review is *de novo*. **See Wilson**, **supra**. "If no statutory authorization exists for a particular sentence, that sentence is illegal and . . . **must** be vacated." **Commonwealth v. Stevenson**, 850 A.2d 1268, 1271 (Pa. Super. 2004) (*en banc*) (emphasis added).

At sentencing, the Commonwealth requested that the trial court prohibit the corporation:

> from conducting any business within the Commonwealth during its period of probation, to include a prohibition against maintaining, creating, endorsing, or hosting, etc. any chapter, associate chapter, or colony at any college, university, or other institution of higher education within the Commonwealth and . . . from hosting, convening, or attending any event or activity (i.e., National Convention, National Conference, "Crossing" weekend, etc.) within the Commonwealth.

Commonwealth's Sentencing Memorandum at 3.

After admitting that "Pennsylvania statutes regarding sentencing do not specifically enumerate the authorized sentence for a corporate defendant," the Commonwealth argued "it can be logically deduced that, while a corporation could not be incarcerated, a corporation does have an existence sufficient to subject it to [a trial court's] authority to impose fines and a period of probation." **Id.** at 8 (citing 18 U.S.C.A. § 3551(c)). Relying upon the

Federal Sentencing Code, the Commonwealth contended that the trial court could exercise vast authority over this corporation, because nothing in the Pennsylvania Sentencing Code expressly prohibited it from doing so. *See* Commonwealth's Sentencing Memorandum at 8.

The trial court, accepting the Commonwealth's reasoning, stated:

> In researching and reviewing cases where a corporate defendant has been convicted – there's nothing in Pennsylvania – but there are some federal cases, and you probably heard of Exxon or BP, whatever they called it at the time. And, in reviewing the sentencing statute and the statute for corporate liability that was applied and discussed in a pretrial Opinion and Order, I see no - - I see nothing that prevents the court from issuing a sentence of probation to ensure that the court's very specific mandates to the fraternity be carried out.

N.T., 1/8/18, at 24. The court then imposed a sentence of ten years' probation and enjoined the corporation from conducting any business, owning any subsidiary or property, or attending any event in Pennsylvania during that time. *See id.* at 28 – 29.

As the Commonwealth and trial court recognized, Pennsylvania's criminal law, unlike the federal statutes and guidelines, does not specifically address the punishment of corporate defendants (i.e., legal fictions). *See* 42 Pa.C.S.A. § 9721 (drawing no distinction between organizational defendants and living ones). Four of the seven sentencing options in Section 9721 deal with incarceration and intermediate punishments, penalties that are metaphysically inapplicable to corporate persons.

One commentator has observed that convicted corporations "are treated a bit like children; as neither can be put in prison. Instead, judges may order them to pay fines and to make reforms." Brandon L. Garret, TOO BIG TO JAIL: HOW PROSECUTORS COMPROMISE WITH CORPORATIONS, 146 (2014). Neither Professor Garret's research nor this Court's revealed any case where, as a condition of probation, a court had outlawed a corporation from conducting *any* business in an entire state. **See id.**, Chapter 6 "The Carrot and the Stick," 145 – 171. Moreover, the Federal Sentencing Guidelines' chapter on the punishment of corporate defendants does not suggest outlawry as a condition of probation. **See** Chapter Eight, Federal Sentencing Guidelines (U.S. Sentencing Comm'n 2018).

Even the case the trial court referenced at sentencing – BP's exploded oil rig, *Deepwater Horizon* – did not terminate BP's business operations in the United States or Louisiana. **United States v. BP**, 1/29/13 Order of Sentence, 2:12-cr-00292-SSV-DEK (E.D. La. 2013). As part of its plea bargaining, BP had to hire two corporate monitors for four years to supervise safety procedures and to focus on ethics and compliance. **See id.** There were other probationary conditions, such as revising their oil-spill response plan, hiring outside auditors, and disclosing future safety violations. The most onerous condition was suspension of the company from entering a contract with the United States government for one year. **See id.** We therefore conclude the trial court's reliance on **BP** to exile the corporation at bar from Pennsylvania for ten years was misplaced.

Also, the trial court's attempt to justify the corporation's exile by the General Assembly's silence is erroneous for several reasons. First, it violates this Court's precedents. "If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction." **Stevenson**, 850 A.2d at 1271.

Second, the trial court's assumption of authority based upon legislative silence disregards the General Assembly's mandate that its penal code "shall be strictly construed." 1 Pa.C.S.A. § 1928(b)(1). Contrary to the claim of the Commonwealth in its Sentencing Memorandum, a trial court may not logically deduce that it possesses penal authority greater than what the legislature has expressly granted to the court. The statute authorizing conditions of probation contains no term expressly empowering a trial court to discontinue a business entity's commerce within this Commonwealth. **See** 42 Pa.C.S.A. § 9754(c).

Most of the authorized conditions in Section 9754(c) are irrelevant to corporations. Some examples include ordering a probationer to meet family obligations, undergo drug and alcohol screening, attended treatment classes, and maintain employment and a permanent residence. The Section 9754(c) conditions that could apply to corporations are (2.1) community service; (8) pay restitution; (10) report, through its agents, to a probation officer; (11) pay its fines and (13) "satisfy any other conditions reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty or incompatible with his freedom of conscience." **Id.**

Only 42 Pa.C.S.A. § 9754(c)(13) potentially provides the authority that the trial court exerted when it outlawed the corporation. But outlawry from the whole Commonwealth bears no relation to the corporation's rehabilitative process. Instead, it is punitive in nature, and such a condition of probation cannot be sustained under the language of subsection (c)(13). Also, this condition of probation unjustly punishes the Penn State Chapter of Pi Delta Psi, students who had absolutely nothing to do with the hazing death in this case. It also totally restricts the corporation's future expansion within this Commonwealth at any other colleges or universities. The corporation may not own property, attend Greek Life events, or enter contracts in Pennsylvania, during this term of probation. It thus unduly restricts the corporation's liberty by completely cutting it off from the Pennsylvania marketplace.

Third, the probationary condition flies in the face of the common law of corporations. It has long been the common law that corporations "may not commit treason, nor be outlawed, nor excommunicated, for they have no souls . . . ." **The Case of Sutton's Hospital**, 77 Eng. Rep. 960 (K.B. 1612). The Supreme Court of Pennsylvania, in that same vein, declared a corporation's special conditions of sentencing to be illegal. **See Pittsburgh, Virginia & Charleston Railway Co. v Commonwealth**, 12 W.N.C. 280 (Pa. 1882) (holding that the only permissible sentence for a corporate defendant was a fine, not specific performance to right the wrong it had committed). While the Pennsylvania Sentencing Code has expanded the punishments for convicted corporations beyond fines to include Section 9754(c)'s conditions of probation,

we find nothing therein that supplants the common law prohibition on outlawing a corporate entity.

Without such legislative authorization, we conclude the common law still holds validity. The corporation cannot be criminally "outlawed, nor excommunicated, for [it has] no [soul]." *Sutton's Hospital*, *supra*. An amoral corporation is no more amenable to such penalties, than it is to incarceration in a penitentiary.

In reality, corporations have no moral compass, or, as the Lord Chief Justice Coke put it, "no soul." *Id.* A corporation cannot feel the guilt of the harm it caused, even when that harm resulted in the tragic loss of human life, because it feels nothing at all. This corporation, though vicariously liable to make redress for the illegalities of its agent, did not kill anyone. While its negligent management may have fostered a corporate culture that permitted or even encouraged wanton behavior by student members, the corporation did not tackle or physically attack anyone. It has no body with which to do so. And so outlawry of a corporation makes no more sense now than it did in the 17th century, because, like any tool, the corporation is no more morally accountable than a hammer or a sword or a firearm. It is the wielder who sins; not his or her weapon.

Yet the trial court is not without authority to oversee the rehabilitation of the corporation's culture and transfer the tool into the hands of agents who will wield it for good. We believe a Pennsylvania trial court could impose many of the conditions of probation used in *BP*, *supra*, against a corporation, within

the bounds of its discretion and 42 Pa.C.S.A § 9754(c)(13).  Professor Garrett also offers many additional ideas to transform a corporate ethos that a trial court might, if properly fitted to the circumstances at bar, order as well.  **See** Garrett, **supra**.

But, finding no authority in statute or at common law to support the trial court's decision to enjoin the corporation from conducting any business within this state for ten years, we conclude that portion of its sentence is illegal.  We therefore vacate that sentence.  Because this "upsets the original sentencing scheme of the trial court," we remand for resentencing.  **Commonwealth v. Goldhammer**, 517 A.2d 1280, 1283 (Pa. 1986).

The trial court may fashion new terms of probation to monitor how the corporation conducts its business throughout this Commonwealth and whether it is taking steps nationally to reform its corporate culture of hazing.  But the trial court may not outlaw it from participating in the commerce of this Commonwealth.

Judgment of sentence vacated.  Case remanded for resentencing.

Jurisdiction relinquished.

Judge Lazarus joins the Opinion.

Judge Colins files a Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/23/19