J-S40043-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JESSE DERICK GIDDINGS | : | |
| | : | |
| Appellant | : | No. 431 MDA 2025 |

Appeal from the Judgment of Sentence Entered February 24, 2025
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0000240-2021

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and MURRAY, J.

MEMORANDUM BY MURRAY, J.: **FILED: DECEMBER 23, 2025**

Jesse Derick Giddings (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of two counts each of robbery, theft by unlawful taking, simple assault, and recklessly endangering another person.[1] We affirm.

The trial court summarized the facts underlying this appeal:

On November 12, 2020, the Boost Mobile store located at 620 Hepburn Street in the [C]ity of Williamsport[, Pennsylvania,] was robbed. The Boost Mobile employee described that the suspect entered the store and began asking about different merchandise. When the employee walked back to the register to check pricing on the equipment, the suspect displayed a handgun and asked about the money in the cash register. The suspect had the employee empty the register and then demanded iPhones. Before leaving the store with $587 from the register and 14 iPhones in a black Boost Mobile bag, the suspect ordered the employee to lay on the ground and not move for 20 minutes. When the

_____

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 3921(a), 2701(a)(3), 2705.

[Williamsport] city police reviewed the [store's surveillance] footage, they observed a black male wearing a black hat, a black zippered hoodie, a black face mask, neon yellow gloves, a brown belt, dark colored jeans, and black and red Nike sneakers. The handgun used during this incident was described as having a silver slide with a black frame.

On November 16, 2020, the Family Dollar store located at 1221 W. 4th Street in … Williamsport was robbed. One of the employees at the Family Dollar store indicated that the suspect displayed a handgun and demanded money from the cash register. When the employee said the register could not be opened without a transaction, the suspect demanded cartons of cigarettes be rung up to open the register. The employee placed 4 cartons of Newport cigarettes and $220 from the register into a Family Dollar bag. The suspect told the employee to lay on the ground before the suspect exited the store. [Surveillance] footage of the Family Dollar store revealed the perpetrator of the robbery as a black male wearing a black hat, a black zippered hoodie, a black face mask, jeans, and white sneakers.

Further investigation by the [] police revealed that [Appellant] purportedly provided a number of his family members with cell phones[, and told] a family member named Nigel Staten-Chambers (Staten-Chambers) about his activities [in connection with the robberies]. Another family member told police that Staten-Chambers acknowledged that he received the cell phones from [Appellant and] admitted to sharing a silver and black handgun between the two of them. Staten-Chambers also told a witness that [Appellant] had robbed the Family Dollar store [and] the Boost Mobile store.

Trial Court Opinion and Order, 7/11/24, at 1-2.

Pertinently, at the time of the robberies, Appellant "was on parole and was required to wear an electronic tracking monitor attached to his ankle." *Id.* at 1. Police "confirmed that [Appellant] had been present at both the Boost Mobile and Family Dollar stores at the time of the robberies by

[reviewing] the data from the [Global Positioning System (GPS)] monitor worn on [Appellant's] ankle." *Id.* at 2.

The Commonwealth charged Appellant with the above offenses.[2] Before trial, the Commonwealth identified John Inzinna (Mr. Inzinna) as an expert witness:

> [Mr. Inzinna] is an account manager for Attenti, US, Inc. [(Attenti)], the provider of [Appellant's] electronic monitoring device. The Commonwealth produced a one-page letter from Mr. Inzinna generally describing how the monitoring device works [(report),] and [Mr. Inzinna's] one-page [curriculum vitae (CV)].

*Id.* at 16. Appellant filed a motion *in limine* which, *inter alia*, sought to preclude Mr. Inzinna's testimony, arguing his report was deficient and he was not qualified to testify as an expert.

On July 11, 2024, the trial court filed an opinion and order, denying the portion of Appellant's motion related to Mr. Inzinna. *See id.* at 17-20. In its order, the trial court stated that it

> finds that Mr. Inzinna qualifies as an expert under the liberal standard of *Miller v. Brass Rail Tavern*[, 664 A.2d 525 (Pa. 1995)]. [Appellant's] concerns go to the weight of Mr. Inzinna's testimony, not its admissibility. However, Mr. Inzinna['s testimony] will be limited to the scope of his report[,] unless the Commonwealth submits a supplemental report.

Trial Court Opinion and Order, 7/11/24, at 20.

---

[2] The Commonwealth also charged Appellant with several firearms offenses. *See* Amended Information, 9/16/24. The firearms offenses were severed from the above offenses and are not relevant to the instant appeal. *See* Order, 9/17/24.

The matter proceeded to a jury trial on September 17-18, 2024. At the trial's conclusion, the jury convicted Appellant of the above offenses.

On November 12, 2025, the trial court imposed an aggregate sentence of 14 to 28 years' imprisonment. Appellant timely filed a post-sentence motion. On February 24, 2025, the trial court partially granted the motion and filed an amended sentencing order reflecting the merger of certain offenses, though Appellant's aggregate sentence remained unchanged. On February 25, 2025, the trial court filed an additional order denying the remainder of Appellant's post-sentence motion.

Appellant timely appealed.[3] Appellant and the trial court have complied with Pa.R.A.P. 1925. Appellant identifies the following issue for our review:

> Did error occur where the [trial c]ourt denied Appellant's Motion *in Limine* and allowed the Commonwealth to present expert testimony [from Mr. Inzinna] regarding GPS, despite [Appellant's] objection to [Mr. Izinna's] qualifications and the sufficiency of [his] report?

_____

[3] On August 11, 2025, this Court directed Appellant to show cause why his March 27, 2025, notice of appeal should not be quashed as untimely filed, depending on "whether February 24, 2025[,] or February 25, 2025[,] should be the operative date in terms of commencement of the 30-day appeal period…." Show Cause Order, 8/11/25. After Appellant filed a response, we discharged the rule and referred the issue to the merits panel. Pennsylvania Rule of Criminal Procedure 720(A)(2)(a) provides that "[i]f the defendant files a timely post-sentence motion, the notice of appeal shall be filed … within 30 days of the entry of the order deciding the motion." Pa.R.Crim.P. 720(A)(2)(a). The trial court did not fully decide Appellant's post-sentence motion until it entered the February 25, 2025, order. Accordingly, we determine that Appellant's 30-day appeal period commenced on February 25, 2025, and his notice of appeal was therefore timely.

Appellant's Brief at 4.

We review "a trial court's decisions regarding the admissibility of evidence for an abuse of discretion." *Commonwealth v. Jones*, 240 A.3d 881, 889 (Pa. 2020) (citation omitted); *see also Commonwealth v. Ivy*, 146 A.3d 241, 250 (Pa. Super. 2016) ("When ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard of review.").

Expert witness testimony is governed by Pennsylvania Rule of Evidence 702, which provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
>
> (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
>
> (c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

Expert testimony "is permitted only as an aid to the jury when the subject matter is distinctly related to a science, skill, or occupation beyond the knowledge or experience of the average layman." *Jones*, 240 A.3d at 890 (citation omitted).

> The test to be applied when qualifying a witness to testify as an expert witness is whether the witness has **any** reasonable pretension to specialized knowledge on the subject under investigation. If he does, he may testify and the weight to be given to such testimony is for the trier of fact to determine.

***Commonwealth v. Clemat***, 218 A.3d 944, 954 (Pa. Super. 2019) (quoting ***Miller***, 664 A.2d at 528 (emphasis in original)).

Instantly, Appellant's brief contains less than three pages of argument. ***See*** Appellant's Brief at 7-9.[4] Appellant initially sets forth the legal standard for expert testimony. ***Id.*** at 7-8 (quoting Pa.R.E. 702 and ***Jones***, ***supra***). The remainder of Appellant's argument, reproduced here in full, states as follows:

> In the instant case, [Appellant] objected to a report and testimony by [Mr.] Inzinna, who purported to show [Appellant's] movements while on a GPS monitor. Before trial, Appellant unsuccessfully questioned the potential presentation.
>
> Ironically, the testimony of Mr. Inzinna ultimately proved [Appellant's] point. [During Mr. Inzinna's] cross-examination at trial regarding qualifications, [Appellant's] counsel established the following: [Mr. Inzinna] did none of the code writing for the required software; [Mr. Inzinna] had no idea how the coding is calculated or how data is gathered; [Mr. Inzinna] had no proprietary information about the commercial satellites that are utilized; [Mr. Inzinna] had no involvement in the cellular services that could and would be utilized; [Mr. Inzinna] had no involvement in data collection; and [Mr. Inzinna] knew nothing about the algorithm used in the process. [N.T., 9/18/24, at 19-22.]
>
> [Appellant] acknowledges that there is a liberal standard for admission of experts. ***Jones***[, 240 A.3d] at 890. As stated, a ruling regarding the admission of evidence will not be disturbed on appeal "unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to

_____

[4] The Commonwealth did not file an appellate brief.

- 6 -

be clearly erroneous." ***Commonwealth v. Einhorn***, … 911 A.2d 960, 972 (Pa. Super. 2006).

>Respectfully, even in light of the above, [Mr. Inzinna] and his report should never have been in front of a jury. His answers to questioning showed that he failed the first requirement under Pa.R.E. 702(a). [Mr. Inzinna] was not an expert. He was a glorified reader. [Appellant's] pre-trial objection should have been sustained and the trial was impermissibly tainted as a result.

Appellant's Brief at 8-9.

While Appellant identifies certain concessions Mr. Inzinna made during cross-examination, Appellant's brief fails to discuss Mr. Inzinna's direct testimony regarding his expert qualifications. ***See generally id.***; ***see also*** N.T., 9/18/24, at 4-19 (Mr. Inzinna's testimony regarding his qualifications). Further, Appellant's brief avoids any discussion of Mr. Inzinna's substantive testimony. ***See generally*** Appellant's Brief; ***see also*** N.T., 9/18/24, at 23-71. Appellant does not identify any testimony that exceeded Mr. Inzinna's expertise, nor any testimony regarding the topics on which Mr. Inzinna conceded his lack of expertise. ***See generally*** Appellant's Brief.

Further, Appellant's brief fails to mention the facts underlying the charges against Appellant,[5] and makes no attempt to explain the relevance of Mr. Inzinna's testimony to those charges. ***Id.*** For these reasons, we deem

---

[5] Appellant's half-page statement of the case violates Pa.R.A.P. 2117, which requires an appellant's statement of the case to set forth, *inter alia*, "[a] closely condensed chronological statement, in narrative form, of all the facts which are necessary to be known in order to determine the points in controversy, with an appropriate reference in each instance to the place in the record where the evidence substantiating the fact relied on may be found." Pa.R.A.P. 2117(a)(4); ***see also*** Appellant's Brief at 5.

Appellant's issue waived. ***See Commonwealth v. Pi Delta Psi, Inc.***, 211 A.3d 875, 884-85 (Pa. Super. 2019) ("When an appellant's argument is underdeveloped, we may not supply it with a better one. In such situations, we shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument; instead, we will deem the issue to be waived." (citation, quotation marks, and brackets omitted)).

Even if not waived, Appellant's issue would not merit relief. The trial court rejected Appellant's argument regarding Mr. Inzinna's qualifications, reasoning as follows:

> Mr. Inzinna's CV provides in relevant part: (1) [Mr.] Inzinna is an energetic, results-oriented professional with extensive experience in both law enforcement and the electronic monitoring industry; (2) he strives to understand the customer and provides relevant solutions as they seek to enhance their electronic monitoring programs; (3) he is responsible for customer training, agency-specified reports, and related documentation and he assists customers in setting up policies and procedures for electronic monitoring programs; and (4) prior to his role as an Account Manager at Attenti, he served as a Corrections Officer in Hudson County, [New Jersey, where he] was instrumental in assisting with the development of the electronic monitoring policies and procedures….
>
> Based on Mr. Inzinna's CV, the [trial] court finds that Mr. Inzinna has specialized knowledge regarding electronic monitoring beyond that possessed by the average layperson. ***See*** Pa.R.E. 702(a). Therefore, the court rejects [Appellant's] argument and … will permit Mr. Inzinna to provide testimony as an expert witness[,] but limited to the matters contained within the scope of his report. Notably, Mr. Inzinna's report does not discuss the actual data retrieved from [Appellant's] monitor, how the address is calculated, or the accuracy or reliability of that data. [The report] only addresses how the device collects the raw data; it does not address how that data is converted into an address. [Appellant] is free to cross-examine Mr. Inzinna regarding the lack

of information regarding the speed heading in the report[,] or how the address is calculated[,] to try to show … Mr. Inzinna's lack of depth of knowledge in this area[. Appellant may also] choose to call his own expert to expose the flaws in Mr. Inzinna's expected testimony. The Commonwealth is also free to obtain a supplemental report if it wants Mr. Inzinna to provide more information or information on other topics such as how the address is generated or the reliability and accuracy of the address generated.[6] Based on the liberal standard for qualifying as an expert set forth in [**Miller**, **supra**,] and its progeny, the court finds that [Appellant's] allegations and concerns go to the weight of Mr. Inzinna' s testimony and not its admissibility.

Trial Court Opinion and Order, 7/11/24, at 17-19 (footnote added); **see also** Rule 1925(a) Statement, 4/29/25, at 1-3 (indicating trial court's reliance on its July 11, 2024, opinion and order with respect to the issue of Mr. Inzinna's testimony).

We agree with the trial court's analysis, and discern no abuse of discretion in its decision to permit Mr. Inzinna to testify as an expert. Accordingly, Appellant's sole issue fails, and we affirm his judgment of sentence.

Judgment of sentence affirmed.

---

[6] Appellant does not argue that Mr. Inzinna's trial testimony exceeded the scope of his report. **See generally** Appellant's Brief.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/23/2025