J-S01024-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TROY MERKE | : | |
| | : | |
| | : | No. 146 EDA 2019 |

Appeal from the Order Entered November 6, 2012,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0004503-2011.

BEFORE: BOWES, J., KUNSELMAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY KUNSELMAN, J.: **FILED APRIL 14, 2020**

Troy Merke appeals, *nunc pro tunc*, from a judgment of sentence imposed after he was convicted in a bench trial of voluntary manslaughter and possession of an instrument of crime. Upon review, we affirm Merke's convictions, but we remand for resentencing.

The trial court detailed the pertinent trial testimony presented by the Commonwealth, as follows:

> On December 25, 2010, at about 4:03 a.m., Philadelphia Police Officer Rahsaan Price received a radio call directing him to go to 5849 Stockton Road in Philadelphia to investigate a call advising that there was a man with a gun and a hospital case involving a male who had been shot in the hand. The officer and his partner immediately drove to that residence and upon arrival Officer Price observed upon climbing the first of three flights of stairs, a male, later identified as Tyree Devon Young, the

---

[*] Retired Senior Judge assigned to the Superior Court.

victim herein, [lying] on the sidewalk. He immediately radioed that the shooting was "founded" and that a rescue squad should be dispatched. He then encountered [Merke], who was exiting the property. [Merke] pointed in the direction of the victim and volunteered that he had shot him.

Officer Price handcuffed [Merke] and asked him, *inter alia*, where was the gun. [Merke] directed the officer to the living room and once there, the officer saw a gun sitting on a pile of wrapped Christmas gifts behind a door. The officer made the gun "safe" and then placed it back where he found it.

Officer Price thereafter checked for possible witnesses and additional victims. He encountered two people in a second floor bedroom who said that they had not witnessed the shooting but had heard an argument followed by gunshots. In the officer's opinion, the inside of the residence was "fine."

Officer Price also spoke to Latoya Merke, [Merke's] sister, who was inside the residence at the time of the incident. Ms. Merke stated that [Merke] and [victim] were "arguing and scuffling" and that she heard gunshots.

\*\*\*

Ms. Merke testified that she resided at 5849 Stockton Road with her mother, two cousins, and [Merke] and that she had known the victim for a very long time and considered him to be her cousin. Ms. Merke added that she had gone out with the victim and [Merke] to a bar/restaurant called the Moonlight Museum and that they left the bar after the victim started a fight and was removed from the bar by security. Before going to the Moonlight [Merke] and the victim had gone to another bar called the Charlie B's, according to Ms. Merke, and [Merke] called her and asked her to meet them at the house to go with them to the Moonlight. When they arrived, the victim was drunk.

After leaving the Moonlight, Ms. Merke and the two men drove to 5849 Stockton Road. During the ride both men began to argue when the victim accused [Merke] of not "having his back" when they were in the Moonlight to which [Merke] responded that the victim was drunk and was

"really bugging". When they arrived at the residence, both men began to argue outside the residence. Ms. Merke left them outside and went inside to the kitchen. In her opinion both men were intoxicated after leaving the Moonlight.

Sometime later, while she was in the kitchen, she heard the victim and [Merke] come inside and then saw them wrestling in the living room. In her opinion they were not playing with one another, because they fell onto the floor over a table where they continued to wrestle. She heard both men say to the other one, "Let it go," but both men wanted the other one to do so first.

At some point she told them to stop. She then heard a single shot and as she was about to exit the kitchen she heard a second shot that caused her to go back inside the kitchen and hide. [Merke] then came inside and Ms. Merke called the police after [Merke] told her to do so because something was wrong with his hand.

She added that she did not see anyone with a gun before the shots were fired and that the first time she saw a gun was after she heard the shots. It was on a living room table near the door where presents were piled. She said that she did not see who fired them after which she heard the door open. She told the police during an interview that she assumed that the gun belonged to [Merke,] because she had never seen the victim with a gun.

At about 4:05 a.m., Philadelphia Police Officer Todd Landherr and his partner, Officer Charles Klink, went to 5849 Stockton Road in Philadelphia after receiving a radio call. Upon arrival, Officer Landherr encountered [Merke], who was having an injury to his hand attended to. After noting that two other officers were already at the [scene], he observed the victim [], who was [lying] half on the sidewalk and half on the street. He further observed a blood trail from a pool of blood near the victim that went up two of the three flights of stairs that led to the front door of the property. On the second step of the second staircase, in addition to blood, the officer saw a fired shell casing. On the third set of steps, which led into the property there was more blood.

Trial Court Opinion, 4/23/2019, at 2-4.

The Commonwealth presented testimony through various police officers, including a statement given by Merke following his arrest, and their processing of the crime scene. The Commonwealth also presented expert testimony regarding the injuries sustained by the victim, and the cause and manner of his death.

Merke testified at trial. The trial court summarized his testimony as follows:

> [Merke] testified in his own defense. He related, *inter alia*, that after he, the victim, and his sister left the Moonlight Bar, they went to [Merke's] house where the victim began to argue with [Merke] about leaving the bar and whether or not he was drunk. [Merke] went inside his residence, after retrieving his gun from the glove box of the car where he put it before going into the bar. Once in the house, [Merke] placed the gun on a table and was about to call a woman whose telephone number he got at the bar when the victim opened the front door and began yelling at [Merke,] saying that he wanted to fight. The victim then "swung on" [Merke,] and the two men began wrestling.
>
> As they wrestled, [Merke] told the victim to go home because he was drunk. The victim then mentioned the gun and said he knew what to do with it. [Merke] immediately reached for the gun to prevent the victim from gaining control of it and when he did, the victim charged him and tried to wrestle the gun out of [Merke's] hand. During the struggle, the gun fired.
>
> After the gun went off [Merke] managed to get the victim off of him. He again told the victim to go home because he was drunk. The victim responded by yelling at [Merke] and then by charging at him. They again began wrestling over the gun, which fired a second time during the struggle. [The victim] then backed up and ran out of the front door. [Merke] followed him outside and saw that he

was [lying] at the bottom of the stairs and that he was bleeding. [Merke] then went back into the house and told his sister to call the police. He also informed her that something was wrong with his hand. [Merke] added that [the victim] had his coat on during the entire affray and that despite having had two drinks he was in control of his faculties.

[Merke] denied shooting the victim outside and said that the entire incident occurred inside the house. He also denied pulling the gun on the victim and stated that he reached for it only to keep the victim from gaining control of it. Finally, [Merke] denied delaying contacting the police to get his story straight.

Trial Court Opinion, 4/23/19, at 7-8.

After a bench trial in September 2012, the court found Merke guilty of voluntary manslaughter (unreasonable belief), and possession of an instrument of crime.[1] On November 6, 2012, the trial court sentenced Merke a statutory mandatory minimum sentence of five to ten years of imprisonment for his involuntary manslaughter conviction, and a consecutive five-year probationary term for his possession of an instrument of crime conviction. Merke did not file a post-sentence motion or a direct appeal.

On October 17, 2013, Merke filed a timely pro se PCRA petition, and the PCRA court appointed counsel. On October 10, 2014, PCRA counsel filed an amended petition in which Merke sought the reinstatement of his appellate rights nunc pro tunc. By order entered December 11, 2018, the PCRA court

_____

[1] 18 Pa.C.S.A. §§ 2503(b) and 907(a), respectively.

- 5 -

granted Merke's "Motion to Reinstate Appellate Rights Nunc pro Tunc to Superior Court." PCRA Order, 12/11/18, at 1.[2] This timely appeal followed. Both Merke and the trial court have complied with Pa.R.A.P. 1925.

Merke raises the following issue on appeal:

> I. Is [Merke] entitled to an arrest of judgment on all charges where he acted in self-defense and where the Commonwealth failed to prove the necessary elements of voluntary manslaughter?

Merke's Brief at 3.[3]

Merke's issue relates to sufficiency of the evidence. A challenge to the sufficiency of the evidence presents a pure question of law and, as such, our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Jacoby**, 170 A.3d 1065, 1076 (Pa. 2017). When analyzing whether the evidence was sufficient to support a conviction, this

---

[2] The certified record offers no explanation for the over five-year delay between the filing of Merke's *pro se* PCRA petition and the PCRA court's grant of *nunc pro tunc* relief. Our Supreme Court has made clear that "[t]he PCRA court [has] the ability and responsibility to manage its docket and caseload and thus has an essential role in ensuring the timely resolution of PCRA matters." **Commonwealth v. Renchenski**, 52 A.3d 251, 260 (Pa. 2012) (citing **Commonwealth v. Porter**, 35 A.3d 4, 24-25 (Pa. 2012) (explaining, "the court, not counsel, controls the scope, timing and pace of the proceedings below")).

[3] Although Merke seeks an arrest of judgment on "all charges," he presents no argument with regard to his conviction for possession of an instrument of crime. Thus, that sufficiency claim is waived. **See Commonwealth v. Wilson**, 147 A.3d 7, 22 (Pa. Super. 2016)(explaining when an appellant offers no citation to pertinent case law or other authority in support of an argument, the claim is waived).

Court must "view the evidence in the light most favorable to the Commonwealth as the verdict winner in order to determine whether the jury could have found every element of the crime beyond a reasonable doubt." *Commonwealth v. Thomas*, 215 A.3d 36, 40 (Pa. 2019). "The Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant." *Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013). "The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." *Commonwealth v. Brown*, 52 A.3d 320, 323 (Pa. Super. 2012). "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Vargas*, 108 A.3d 858, 867 (Pa. Super. 2014) (*en banc*). Additionally, this Court cannot "re-weigh the evidence and substitute our judgment for that of the fact-finder." *Id*.

The trial court found Merke guilty of unreasonable belief voluntary manslaughter. Our Supreme Court has described this crime, and its interplay with a claim of self-defense, as follows:

> [U]nreasonable belief voluntary manslaughter, sometimes loosely referred to as "imperfect self-defense," . . . [occurs] where a defendant held an unreasonable rather than a reasonable belief that deadly force was required to save his or her life and all other principles of justification under 18 Pa.C.S. § 505 have been met. Generally, the use of deadly force is not justifiable unless the actor believes that such

force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat. 18 Pa.C.S. § 505(b)(2). Although a defendant has no burden to prove a claim of self-defense before such a defense is properly in issue, there must be some evidence, from whatever source, to justify such a finding. The evidentiary elements necessary to prevail on a justification defense are that the defendant (a) reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) was free from fault in provoking the difficulty which culminated in the slaying; and (c) did not violate any duty to retreat.

***Commonwealth v. Sanchez***, 82 A.3d 943, 980 (Pa. 2011) (citations omitted).

Here the trial court, who sat as fact-finder, concluded that the testimony summarized above, established that Merke unreasonably believed that deadly force was necessary:

> The evidence supported the unreasonable belief Voluntary Manslaughter conviction beyond a reasonable doubt because the evidence clearly established that [Merke's] belief that he was in danger of death or serious bodily injury was clearly unreasonable. First, [Merke] left the gun out in plain view knowing that the victim was intoxicated. Then, as the two men argued, [Merke] reached for the gun thereby further exacerbating the situation and inciting a struggle for the gun. In addition, the evidence established that [Merke] was able to free himself from the victim's grasp while in possession of the gun and then shot the victim more than once while situated some distance from the victim. Once [Merke] created some distance between himself and the victim he was no longer in danger and did not have to fire any more shots at [the victim], who was not armed and did not present a threat to cause death or serious bodily injury to [Merke].
>
> In addition to the foregoing, the evidence showed that the victim was shot in the left upper back and a spent shell

casing was recovered by authorities outside the residence thereby strongly suggesting that [Merke] shot the victim as he tried to flee. In view of the foregoing, it is respectfully suggested that the conviction is sustained under the theory of imperfect self-defense because it established that [Merke's] belief that he was in danger of death or serious bodily injury was clearly unreasonable.

Trial Court Opinion, 4/23/19, at 10-11.

Upon reviewing the record and employing the standard of review summarized above, **Thomas**, **supra**, supports the trial court's conclusions. In his brief, Merke essentially argues that, based on his testimony, as well at that from his sister, his use of deadly force was reasonable, and the Commonwealth did not disprove his claim of self-defense. **See** Merke's Brief at 8-11. In addition, Merke claims that the evidence presented by the Commonwealth was so inherently unreliable and contradictory that any guilty verdict thereon was based, improperly, on conjecture. **Id.**

As noted above, the fact-finder is free to believe all, some, or none of the testimony. **Brown**, **supra**. Moreover, the trial court specifically rejected Merke's assertion that it had to resort to conjecture to reach a guilty verdict. First, the trial court correctly noted that a sufficiency claim "does not involve reviewing the evidence from a convicted defendant's perspective," but rather, in the light most favorable to the Commonwealth. Then the trial court found:

the evidence presented by the Commonwealth in this case easily leads to the conclusion that the evidence was not so inconsistent and contradictory that one could conclude that the verdict finding [Merke] guilty of the charges set forth above rests on conjecture and surmise. As noted above, the evidence clearly showed that some of the bullet wounds were not inflicted at close range and may have been inflicted

- 9 -

as the victim tried to flee. Moreover, the facts established that [Merke] was not entitled to a complete defense of self-defense.

Trial Court Opinion, 4/23/19, at 12. We agree with the trial court that the record refutes Merke's characterization of the evidence presented by the Commonwealth. Thus, we affirm his convictions.

Next, although Merke does not challenge the legality of his sentence, we note that we have long held:

> legality of a criminal sentence is non-waivable, and this Court may raise and review an illegal sentence *sua sponte*. Because the legality of a sentence presents a pure question of a law, our scope of review is plenary, and our standard of review is *de novo*. If no statutory authorization exists for a particular sentence, that sentence is illegal and must be vacated.

*Commonwealth v. Pi Delta Psi, Inc.*, 211 A.3d 875, 889–90 (Pa. Super. 2019), *appeal denied*, 221 A.3d 644 (Pa. 2019).

Here the trial court noted its belief that the mandatory five to ten year sentence it imposed is illegal in that 42 Pa.C.S.A. section 9712 has been declared unconstitutional. The court explained:

> Before concluding, this Court is constrained to suggest that the sentence of five to ten years' incarceration imposed on the voluntary [manslaughter] conviction is illegal and must be vacated. This Court applied the mandatory-minimum-sentencing statute found at 42 Pa.C.S. § 9712, which required the imposition of a mandatory-minimum sentence of five years following a conviction for certain enumerated crimes, including Voluntary Manslaughter, committed with a firearm. That provision was determined to be unconstitutional pursuant to the holding in *Alleyne v. United States*, 570 U.S. 99 (2013), in *Commonwealth v. Valentine*, 101 A.3d 801 (Pa.Super. 2014). [In *Alleyne*,

the United States Supreme Court held that any factor that triggers a mandatory minimum must be found by the fact-finder beyond a reasonable doubt.]

Although [Merke] was sentenced a little more than eight months before *Alleyne* was handed down, it is this Court's opinion that he is entitled to the application of *Alleyne* to his case, because he was granted the right to file a direct appeal, *nunc pro tunc*, which he timely filed, a violation of *Alleyne* implicates the legality of his sentence, *see Commonwealth v. Newman*, 99 A.3d 86, 90 (Pa. Super. 2014) (*en banc*), and an issue alleging that a sentence is illegal cannot be waived and can be addressed *sua sponte* by a reviewing court even when the issue has not been preserved for review. *Commonwealth v. Butler*, 173 A.3d 1212 (Pa. Super. 2017).

[Merke's] direct-appeal rights were reinstated by this Court, and he is now proceeding with a *nunc pro tunc*, direct appeal. This Court's reinstatement of [Merke's] direct-appeal rights was premised on a finding that he was denied the opportunity to pursue a direct appeal. Had his trial counsel filed a direct appeal on his behalf, his case would most likely have been pending on direct appeal when *Alleyne* was decided in June of 2013.

Accordingly, for all of the foregoing reasons it is respectfully suggested that [Merke's] sentence be vacated and the matter remanded for resentencing.

*Id.* (footnotes omitted). The Commonwealth agrees with the trial court and adopts its logic.

We accept the learned trial court's reasoning and analysis. Indeed, we agree our precedents, as previously mentioned, hold that *Alleyne* applies to a mandatory-minimum sentence under 42 Pa.C.S.A. § 9712. *See Valentine*, *supra*. Thus, we vacate Merke's five to ten-year sentence for his voluntary manslaughter conviction and remand for resentencing.

- 11 -

Convictions affirmed. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/14/20</u>