J-A02028-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CASEY ALLEN AMARAL, JR. | : | |
| | : | |
| Appellant | : | No. 253 WDA 2024 |

Appeal from the Judgment of Sentence Entered November 17, 2023
In the Court of Common Pleas of Potter County Criminal Division at
No(s): CP-53-CR-0000199-2021

BEFORE: KUNSELMAN, J., MURRAY, J., and BECK, J.

MEMORANDUM BY MURRAY, J.: **FILED: January 28, 2025**

Casey Allen Amaral, Jr. (Appellant), appeals from the judgment of sentence imposed after a jury convicted him of two counts of indecent assault – complainant less than 13 years of age; and one count each of rape of a child, criminal attempt – rape of a child, aggravated indecent assault of a child, corruption of minors, and unlawful contact with a minor.[1] Appellant argues on appeal 1) his convictions of rape of a child and attempted rape of a child are not supported by sufficient evidence; 2) all convictions are against the weight of the evidence; and 3) the trial court improperly denied Appellant's motions for a mistrial at trial and admitted inadmissible evidence. After review, we affirm.

---

[1] 18 Pa.C.S.A. §§ 3126(a)(7), 3121(c), 901(a), 3125(b), 6301(a)(1)(ii), 6318(a)(1).

The trial court, in its Pa.R.A.P. 1925(a) opinion, detailed the relevant evidence presented at trial:

[The victim,] T.B.[,] testified that on the night of … [June 26, 2021, when she was 12 years of age], she and [her minor] friend[, K.A.,] went to bed on a mattress located in [the] downstairs of [Appellant's] home.[2] *See* N.T., 7/18-20/23, at 159:10-160:1. T.B. testified that while she was resting on the mattress, [Appellant] came from the upstairs and began rubbing her thigh and trying to pull her pants down. *See id.* at 160:2-162:20. T.B. testified that [Appellant] proceeded to use his hands to rub her chest and genitalia. *See id.* at 163:1-163:24. Further, T.B. averred that [Appellant] inserted two of his fingers into her vagina, and then proceeded to pull down her underwear and lick her vagina. *See id.* at 164:4-164:22. Then, as T.B. testified, [Appellant] pulled her legs apart, held her legs down, placed a blanket over her head, and "attempted to stick the tip of his penis into my area," which was very painful. *Id.* at 165:5-166:1[; *see also id.* at 163-64 (T.B. clarifying that "area" meant her vagina)]. T.B. also testified that she noticed semen on her left thigh after the incident.[3] *Id.* at 168:6-168:7. …

In addition, … [D.M.], T.B.'s mother, testified at trial that [on the date of the assault,] T.B. told her … via text message that [Appellant] used his fingers and penis to touch [T.B.'s] vagina. *See id.* at 67:9-68:5. Further, [D.M.], as well as other witnesses, testified that T.B.'s personality has drastically changed in several

_____

[2] T.B. testified she was staying at Appellant's home for a sleep-over with K.A., her best friend and Appellant's younger sister. *See* N.T., 7/18-20/23, at 154, 159.

[3] T.B. testified that a few hours after the incident, she woke K.A. and told her about Appellant's assault. N.T., 7/18-20/23, at 167. K.A. responded that T.B. "should tell someone[.]" *Id.*; *see also id.* at 227 (K.A.'s consistent testimony). T.B. then sent text messages to her mother and step-sister, T.M., detailing Appellant's assault, which the Commonwealth introduced into evidence at trial. *See id.* at 169-70; Commonwealth Exhibits 1 & 2. When T.B. arrived back at her residence, another sister, M.B., transported her to the hospital for treatment and a sexual assault examination. *See* N.T., 7/18-20/23, at 171, 173.

negative ways since the incident occurred. *See id.* at 70:6-72:2[; *see also id.* at 50-51, 60-61.] … Additionally, [T.M.], T.B.'s half-sister, testified that T.B. sent her a text message after the incident occurred stating that [Appellant] pulled [T.B.'s] pants down and put "his thing in me." *Id.* at 48:5-48:12[; *see also* Commonwealth Exhibit 1.]

Further, Marisa Townsend [(Nurse Townsend)], a Sexual Assault Nurse Examiner [(SANE)], testified at trial that she examined T.B. at the hospital [later on the day of] the incident.[4] [Nurse] Townsend testified to what T.B. reported happened to her regarding the incident with [Appellant], which is similar in nature to the aforementioned testimonies of T.B. and [D.M.] *See id.* at 87:19-91:12. [Nurse] Townsend further testified that T.B. displayed redness on the posterior fourchette (the area directly below the vaginal opening), which [Nurse Townsend] found was out of the ordinary. *See id.* at 91:13-92:7.

Trial Court Opinion, 5/9/24, at 2-3 (footnotes added; citations modified).

Police arrested Appellant the day after the incident and charged him with the above-mentioned offenses, as well as involuntary deviate sexual intercourse with a child (IDSI).[5] Appellant's first jury trial occurred on April 24 and 25, 2023. When the jury was unable to render a unanimous verdict, the trial court declared a mistrial.

Appellant's second jury trial occurred on July 18-20, 2023. Appellant was represented by private counsel, Christopher Larson, Esquire (trial

---

[4] As part of Nurse Townsend's examination of T.B., she collected physical evidence from T.B.'s person, including from swabs of her body. *See* N.T., 7/18-20/23, at 92-93, 100-01. Nurse Townsend packaged the evidence, sealed it, and provided it to the police. *See id.* at 100-01; *see also* Commonwealth Exhibit 9.

[5] 18 Pa.C.S.A. § 3123(b).

counsel). The Commonwealth called multiple witnesses, including T.B., several of her family members, and Nurse Townsend.

The Commonwealth also called Bobbi Perry (Perry), a mental health professional who met with T.B. for bi-weekly counseling sessions since October 2022. *Id.* at 104. Perry testified, over Appellant's objection, that she counseled T.B. for anxiety, depression, and post-traumatic stress disorder (PTSD).[6] *Id.* at 104-05; *see also id.* at 105-06 (Perry stating she and T.B. addressed "[f]lash backs, anger, depressive episodes, high [] anxiety," and T.B.'s distrust toward males). Perry confirmed that the "basis for the issues that [T.B.] has" is the "trauma" Appellant inflicted upon T.B. *Id.* at 106-07.

Moreover, the Commonwealth presented the testimony of Jared Hiester (Hiester), who testified as an expert in the field of forensic DNA analysis. Heister stated his analysis of the swabs of T.B.'s external genitalia "matches the Y chromosome DNA profile [] obtained from the known reference sample from [Appellant]." *Id.* at 143; *see also id.* at 144 (Heister testifying "neither [Appellant] nor any of his paternally related male relatives can be excluded as the contributor to this DNA.").

At trial, Appellant testified in his own defense and denied any wrongdoing. *Id.* at 199-200, 207. Appellant stated that T.B. did visit his home on June 26, 2021, and he supervised T.B. and K.A., Appellant's minor

_____

[6] Perry further testified a child psychiatrist prescribed T.B. medications to treat her psychological disorders. N.T., 7/18-20/23, at 105.

sister, while Appellant's mother was at work. *Id.* at 193-96; *see also id.* at 200 (Appellant stating he was 21 years of age at the time). Appellant testified that he went to bed in a separate bedroom from T.B. and K.A. that night, and never left his bedroom. *Id.* at 198-99.

The defense also presented testimony from K.A., who testified that on June 26, 2021, she recalled going to sleep in the same bed with T.B. at approximately 4:00 a.m. *Id.* at 227. K.A. stated Appellant remained in his own bedroom when she and T.B. went to bed in another room. *Id.* K.A. testified she

> woke up to [T.B.] crying around 5[:00 a.m.] and … asked [T.B.] what was wrong. [T.B.] asked [K.A.] if [K.A.] could go to the bathroom with her[. K.A.] did and [T.B.] used the bathroom, and then we went outside and … [T.B.] told [K.A.] what happened and [K.A.] told [T.B.] that we have to tell someone. So [T.B.] texted her mom….

*Id.* at 227. K.A. confirmed that she never woke "up to anything happening in the bed." *Id.* at 228.

Finally, Appellant also presented testimony from character witnesses, including Dwight Sharp (Sharp). Sharp testified he had been friends with Appellant since high school and that Appellant had a reputation in the community for peacefulness. *Id.* at 245-46, 247.

On July 20, 2023, the jury found Appellant guilty of the above-mentioned offenses, and not guilty of IDSI. The trial court deferred sentencing for the preparation of a presentence investigation report and sexual offender assessment.

On November 17, 2023, the trial court sentenced Appellant to an aggregate 20 to 40 years in prison, followed by 3 years of probation.[7]  Five days later, Appellant's trial counsel filed a motion for leave to withdraw as counsel, and a motion for extension of time to file post-sentence motions. Trial counsel stated, "[Appellant] wishes to pursue post-sentence action; however, he has not retained [trial c]ounsel to help him do so."  Motion, 11/17/23, ¶ 6.  By order entered November 28, 2023, the trial court 1) denied trial counsel's motion to withdraw as counsel; and 2) directed trial counsel to "preserve [Appellant's] rights before withdrawing" and file a post-sentence motion if Appellant requested.  Order, 11/28/23, at 1 (unpaginated).[8]

On November 30, 2023, trial counsel timely filed a post-sentence motion (PSM), raising a sole claim: all of Appellant's convictions are contrary to the weight of the evidence and shock the conscience.  **See** PSM, 11/30/23, ¶¶ 6-8.  The trial court held a hearing on the PSM on January 30, 2024, wherein the parties presented argument.

_____

[7] Appellant's convictions also rendered him a Tier III offender under the Sexual Offender Registration and Notification Act, subjecting him to lifetime registration and reporting requirements.  **See** 42 Pa.C.S.A. §§ 9799.10 *et seq.* The trial court did not classify Appellant as a sexually violent predator.

[8] The November 28, 2023, order extended the deadline for Appellant to file post-sentence motions from November 27, 2023, to November 30, 2023. Order, 11/28/23, at 1 (unpaginated); **see also** Pa.R.Crim.P. 720(A)(1) ("[A] written post-sentence motion shall be filed no later than [ten] days after imposition of sentence.").

On February 1, 2024, the trial court denied Appellant's PSM and granted trial counsel permission to withdraw as Appellant's counsel. On February 28, 2024, Appellant's new counsel timely filed a notice of appeal. **See** Pa.R.Crim.P. 720, Comment (a)(1) (stating when an appellant files a timely post-sentence motion, the 30-day period is tolled until the court decides the motion or it is withdrawn); Pa.R.A.P. 903(a) (setting a 30-day appeal period).

Appellant timely filed a court-ordered Pa.R.A.P. 1925(b) concise statement on April 17, 2024. The trial court issued its Rule 1925(a) opinion on May 9, 2024.

Appellant presents three issues for our review:

1. Was there sufficient evidence to prove the *mens rea* and *actus re*[*us*] of Rape of a Child under 18 Pa.[C.S.A.] § 3121(c) and Attempted Rape beyond a reasonable doubt?

2. Was the verdict of guilty at trial against the weight of the evidence on all charges?

3. Should the trial court have granted the Appellant's motion for mistrial and a new trial?

Appellant's Brief at 3.

Appellant first claims the evidence was insufficient to sustain his convictions of rape of a child and attempted rape of a child.[9] **See id.** at 9-11.

_____

[9] The trial court correctly ruled Appellant's attempted rape of a child conviction merged with his rape of a child conviction for sentencing purposes. N.T. (sentencing), 11/17/23, at 64; **Commonwealth v. Sparrow**, 370 A.2d 712, 718-19 (Pa. 1977), **overruled on other grounds by Commonwealth v. Tarver**, 426 A.2d 569 (Pa. 1981) ("An obvious example [of merger] is that of
*(Footnote Continued Next Page)*

The Crimes Code defines rape of a child as follows: "A person commits the offense of rape of a child, a felony of the first degree, when the person engages in sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S.A. § 3121(c); *see also Commonwealth v. Dove*, 301 A.3d 427, 432-33 (Pa. Super. 2023). "Sexual intercourse" is defined by statute as follows: "In addition to its ordinary meaning, [sexual intercourse] includes intercourse *per os* or *per anus*, with some penetration however slight; emission is not required." 18 Pa.C.S.A. § 3101. The term "penetration however slight" is not limited to penetration of the vagina; "entrance in the labia is sufficient to constitute penetration[.]" *Commonwealth v. Gilliam*, 249 A.3d 257, 269 (Pa. Super. 2021) (citation and quotation marks omitted); *Commonwealth v. Hunzer*, 868 A.2d 498, 506 (Pa. Super. 2005). Further, "[t]he Commonwealth [is] not required to present any forensic evidence or 'physical proof' of penetration." *Gilliam*, 249 A.3d at 269 (citing *Commonwealth v. Gibson*, 951 A.2d 1110, 1140 (Pa. 2008) (stating there is no constitutional requirement for the police to conduct a forensic analysis of evidence)).

This Court has clarified that

the definition of "sexual intercourse" encompasses vaginal sex (penetration, however slight, of a vagina with a penis), oral sex

---

an attempt to commit an offense, and the completed offense; the former merges into the latter."); *Commonwealth v. Nelson*, 305 A.2d 369, 370 (Pa. 1973) ("If one crime necessarily involves another the two offenses merge.").

(penetration, however slight, of a mouth with a penis or penetration, however slight, of a vagina with a mouth/tongue), or anal sex (penetration, however slight, of the opening of the alimentary canal with a penis). ***Commonwealth v. Martin***, … 101 A.3d 706, 729 (Pa. 2014); ***see also*** [***Commonwealth v.***] ***Kelley***, 801 A.2d [551,] 554-555 [(Pa. 2002)]. Digital penetration, however slight, of the vagina, mouth, or the opening of the complainant's alimentary canal does not qualify as "sexual intercourse" under Section 3101 of the Crimes Code. ***Kelley***, 801 A.2d at 555.

***Dove***, 301 A.3d at 433 (footnotes omitted).

Crimes Code Section 901 defines criminal attempt: "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a); ***see also Commonwealth v. Palmer***, 192 A.3d 85, 88 (Pa. Super. 2018) ("Criminal attempt is a specific-intent crime.").

It is well-settled that "[**t**]**he uncorroborated testimony of a sexual assault victim, if believed, alone is sufficient to support a sex offense conviction**." ***Commonwealth v. Izurieta***, 171 A.3d 803, 807 (Pa. Super. 2017) (emphasis added) (citing ***Commonwealth v. McDonough***, 96 A.3d 1067, 1069 (Pa. Super. 2014)); ***Gilliam***, 249 A.3d at 268; ***see also*** 18 Pa.C.S.A. § 3106 ("The testimony of a complainant need not be corroborated in prosecutions under this chapter."). Significantly, if believed by the trier of fact, **a victim's uncorroborated testimony is sufficient evidence to prove penetration occurred**. ***See Commonwealth v. Trimble***, 615 A.2d 48, 50 (Pa. Super. 1992) ("[T]he uncorroborated testimony of the victim, if believed by the trier of fact, is sufficient to support a conviction, despite

- 9 -

contrary evidence from defense witnesses." (citation and brackets omitted));

***Gilliam***, 249 A.3d at 269.

Here, Appellant argues that "the Commonwealth has failed to prove penetration however slight." Appellant's Brief at 10.

> Circumstantially, … [N]urse [] Townsend testified that there was no injury to [T.B.'s] vagina, but rather, there was redness to the … area below the vagina. Thus, there is no injury to the vagina to establish penile penetration; moreover, even if there were, that injury could have been caused by the purported digital penetration to the vagina. Also, there is insufficient direct evidence; the most that T.B. says is that the Appellant was in the "area[.]"

***Id.*** at 10-11.

The Commonwealth counters Appellant waived his sufficiency challenge, where he

> claimed in his Rule 1925[(b)] statement that the evidence was insufficient to support the guilty verdict[s] and set forth all the offenses [Appellant] was convicted of but did not specify the elements of each offense upon which he claims the evidence was insufficient.

Commonwealth Brief at 10.

In the alternative, the Commonwealth argues the evidence, when viewed in the light most favorable to it as verdict-winner, is sufficient to support the guilty verdicts for rape of a child and attempted rape of a child. ***See id.*** at 11-17. The Commonwealth contends

> [T.B.] testified that [Appellant] attempted to stick the tip of his penis in her body and she could feel it and it was very painful. From this, the jury could infer [that] because there was pain while [Appellant] was making contact [with T.B.'s] vagina with his penis, that he penetrated her vagina.

- 10 -

*Id.* at 15-16 (citations omitted; punctuation modified); *see also id.* at 15 ("[T.B.] testified that she believed [Appellant] penetrated her with his penis, from which the jury, along with the event sequence and [T.B.'s] statement about pain, could have found there was penetration however slight." (punctuation modified)). According to the Commonwealth, the jury properly "chose to believe the testimony of [T.B.] and reject as not truthful that of Appellant." *Id.* at 17.

Preliminarily, we address whether Appellant preserved his sufficiency challenge for review. Pennsylvania Rule of Appellate Procedure 1925(b) mandates that the "Statement shall concisely identify each ruling or error that the appellant intends to challenge **with sufficient detail** to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii) (emphasis added); *see also Satiro v. Maninno*, 237 A.3d 1145, 1151 (Pa. Super. 2020) ("Our law makes it clear that Pa.R.A.P. 1925(b) is not satisfied by simply filing any statement. Rather, the statement must … permit the trial court to understand the specific issues being raised on appeal." (citation omitted)). This Court has stated Rule 1925(b) "is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal." *Commonwealth v. Bonnett*, 239 A.3d 1096, 1106 (Pa. Super. 2020).

Where, as here, the appellant's concise statement challenges the sufficiency of the evidence, the appellant

- 11 -

*must* **specify the element or elements upon which the evidence was insufficient in order to preserve the issue for appeal.** Such specificity is of particular importance in cases where, as here, the [a]ppellant was convicted of multiple crimes[,] each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt.

*Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009) (emphasis added; internal citations and quotation marks omitted). If the appellant fails to specify such elements, the sufficiency claim is deemed waived. *Id.*; *Bonnett*, 239 A.3d at 1105-06 (finding waiver due to appellant's Rule 1925(b) statement vaguely claiming there was "insufficient evidence to sustain a verdict of guilty of each charge in the case."); *Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013) (deeming a sufficiency claim waived where appellant's Rule 1925(b) statement "simply provided a generic statement stating [that] '[t]he evidence was legally insufficient to support the convictions.'" (citation and brackets omitted)). Further, "the mere fact that a [trial] court has authored an opinion addressing potential appellate issues does not excuse an appellant from complying with Pa.R.A.P. 1925(b)."[10] *Commonwealth v. Parrish*, 224 A.3d 682, 700 (Pa. 2020); *Satiro*, 237 A.3d at 1151 (same).

---

[10] Here, the trial court noted with displeasure that Appellant's "1925(b) Statement fails to specify the elements of each offense upon which [Appellant] claims the evidence was insufficient[.]" Trial Court Opinion, 5/9/24, at 4.

Instantly, Appellant's sufficiency challenge in his concise statement does not specify the element or elements, or even the specific crime(s), he challenges on appeal.[11]   Accordingly, Appellant waived his sufficiency challenge.  *See Gibbs*, 981 A.2d at 281; *Bonnett*, 239 A.3d at 1105-06; *Garland*, 63 A.3d at 344.

Even if Appellant had preserved his sufficiency challenge, we would determine it lacks merit.  The record reflects that at trial, T.B. testified she was asleep when she felt Appellant's "hands rubbing up against my thigh." N.T., 7/18-20/23, at 162.  T.B. stated she "was pretending to be asleep." *Id.*; *but see also id.* at 166 (T.B. testifying she attempted to fend Appellant off by "rolling onto my side" and "closing my legs").  Appellant continued to grope T.B.'s thigh and chest for a few minutes.  *See id.* at 162-63.

The following exchange occurred during the prosecutor's direct examination of T.B.:

_____

[11] The Concise Statement specifically raised the following claim:

> 1.  There was insufficient evidence in this matter to sustain a verdict against [Appellant] and prove some of or all of the elements of Rape of Child, 18 Pa.C.S.A. § 3121(c); Criminal Attempt - Rape of Child, *id.* § 901(a); Aggravated Indecent Assault of Child, *id.* § 3125(b)[;] Indecent Assault - Person less than 13 Years of Age [], *id.* § 3126(a)(7); Corruption of Minors - Defendant Age 18 or Above, *id.* § 6301(a)(1)(ii); Unlawful Contact with Minor - Sexual Offenses, *id.* § 6318(a)(1); and Indecent Assault - Person Less than 13 Years of Age, *id.* § 3126(a)(7).

Concise Statement, 4/17/24, ¶ 1 (citations modified).

Q. [Commonwealth:] And after that occurred what did [Appellant] do?

A. [T.B.:] He was rubbing my area.

Q. Okay now when you say [] your area[,] do you mean your private part, your genitalia?

A. Yes.

….

Q. And did any part of [Appellant's] hand go inside your body?

A. His fingers.

….

Q. And after that occurred what happened?

A. [Appellant] pulled my underwear off and started to use his tongue.

Q. Was that again on your private part?

A. Yes.

*Id.* at 163-64. T.B. testified Appellant then "pushed my legs apart … and put a blanket over my face[,] and attempted to stick the tip of his penis into my area." *Id.* at 165; *see also id.* (T.B. stating Appellant was holding her legs down). **T.B. testified that Appellant's penile contact with her genitalia was "very" painful.** *Id.*

A few hours after the incident, T.B. sent text messages to her step-sister, T.M., while inside Appellant's house. Significantly, T.B. stated in the text messages to T.M.:

- 14 -

I was sleeping and woke up to a stinging pain down there. And [Appellant] had his pants down and pulled mine down, and [**Appellant**] **was putting his thing** *in* **me.** And his fingers. It hurts so bad. I can't stop shaking.

*Id.* Commonwealth Exhibit 1 (emphasis added; punctuation and formatting modified); *see also id.* at 169 (T.B. confirming she sent the text messages to T.M.).

Further, Nurse Townsend testified that her physical examination of T.B. a few hours after the incident revealed **redness on the area directly below the vaginal opening, which she found unusual.** *See id.* at 91-92. Nurse Townsend testified that during her interview of T.B., she

asked [T.B.] if there was any penetration of the vagina …. [T.B.] said she was unsure. When I asked [T.B.] about penile penetration[, T.B. replied] in quotation, "**I think he did**[.] I started feeling a sharp pain" end quotation. And [T.B.] did report that fingers were penetrated.

*Id.* at 90 (emphasis added).

We conclude the evidence, properly viewed in the light most favorable to the Commonwealth, was amply sufficient to sustain Appellant's convictions of rape of a child and attempted rape of a child. *See*, *e.g.*, *Trimble*, 615 A.2d at 50 (sufficient evidence existed to prove "penetration however slight" necessary to sustain conviction for rape of a child, where the minor "victim testified that appellant placed his 'wiener' (referring to appellant's penis) in her 'tooter' (referring to her vaginal area)." (citation omitted)); *see also Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011) (stating the Commonwealth "may sustain its burden of proof by means of wholly

circumstantial evidence, and the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence." (citation omitted)). Moreover, no independent evidence beyond T.B.'s credible testimony was required to prove penetration. *See Trimble*, 615 A.2d at 50; *Gilliam*, 249 A.3d at 269. Accordingly, Appellant's sufficiency challenge to his convictions of rape of a child and attempted rape of a child would merit no relief.

In his second issue, Appellant argues the trial court abused its discretion in denying his PSM challenging all verdicts as against the weight of the evidence.[12] *See* Appellant's Brief at 11-12. According to Appellant, "the trial court did not properly consider the weight of Appellant's evidence and the weakness of" the Commonwealth's case. *Id.* at 11. Appellant claims the trial court abused its discretion in crediting the testimony of the Commonwealth's witnesses over those of the defense:

> Appellant [] testified credibly himself and he had credible character evidence in … Sharp. T.B. never testifies with any clarity or unequivocally that Appellant entered her vagina in a penile fashion ever so slightly to establish rape.

*Id.* at 12; *see also id.* ("Most of [the Commonwealth's] evidence is bolstering of T.B., and circumstantial."). Appellant contends "there was a present eye-

---

[12] Appellant preserved his weight claim in his PSM. *See* Pa.R.Crim.P. 607(A)(3); PSM, 11/30/23, ¶¶ 6-8.

witness, [K.A.,] who was friends with T.B.[, and K.A.] testified that she saw nothing happen [on] June 26, 2021." *Id.*

The Commonwealth counters the trial court properly exercised its discretion in rejecting Appellant's weight challenge. *See* Commonwealth Brief at 17-21. "The verdicts were not against the weight of the evidence so as to shock one's sense of justice." *Id.* at 17.

We review a trial court's ruling on a challenge to the verdict as against the weight of the evidence for an abuse of discretion. *Commonwealth v. Wright*, 314 A.3d 515, 524 (Pa. Super. 2024). The *Wright* Court observed,

> [t]he weight of the evidence is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses. Resolving contradictory testimony and questions of credibility are matters for the finder of fact. It is well-settled that we cannot substitute our judgment for that of the trier of fact.
>
> * * *
>
> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice. Furthermore, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

*Id.* (internal citations and quotation marks omitted; formatting modified).

Where, as here, a weight challenge

- 17 -

is predicated on the credibility of trial testimony, [appellate] review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review.

*Commonwealth v. Bowen*, 55 A.3d 1254, 1262 (Pa. Super. 2012) (citations omitted); *see also Commonwealth v. Sanchez*, 36 A.3d 24, 27 (Pa. 2011) ("On appeal, [an appellate c]ourt cannot substitute its judgment for that of the jury on issues of credibility, or that of the trial judge respecting weight." (citation omitted)). "Conflicts in the evidence or contradictions in testimony are exclusively for the fact-finder to resolve." *Commonwealth v. Sanders*, 42 A.3d 325, 331 (Pa. Super. 2012) (citation omitted).

Here, the trial court opined it properly exercised its discretion in denying Appellant's weight claim in its Rule 1925(a) opinion:

Contrary to [Appellant's] position, the weight of the evidence favored [the] guilty verdicts. … The Commonwealth presented many [] witnesses whose testimonies supported the veracity of T.B.'s testimony. Several of the witnesses testified to similar or identical accounts of what T.B. told them regarding the assault. Further, [T.B.'s mother, D.M.,] and other witnesses testified that T.B.'s personality had drastically changed since the incident occurred.

Specifically, [M.B.], T.B.'s sister, testified that before the incident, T.B. use[d] to be an energetic and happy girl[;] however, subsequent to the assault T.B. became very easily upset and "triggered." *See* N.T., 7/18-20/23, at 60:19-61:5. [M.B.] further testified that when T.B. thought she was going to have contact with [Appellant,] or when [T.B.] would see [Appellant] drive by, T.B. would have a panic attack, would start "bawling," and would run and hide. *See id.* at 61:6-61:13.

T[.M., T.B.'s step-sister,] testified that T.B. texted her after the assault occurred and reported that T.B. was frantic, very

upset, confused on what to do, panicking, hyperventilating, and crying. *See id.* at 45:3-45:7. [T.M.] further testified that one of T.B.'s text messages read, "I was sleeping and woke up to a stinging pain down there. [Appellant] had his pants down and pulled mine down and was putting his thing in me. It hurts so bad I can't stop shaking." *Id.* at 48:5-48:12[; *see also* Commonwealth Exhibit 1]. [T.M.] averred that T.B. stayed with her for several days immediately following the incident and would wake up crying out [in] her sleep due to flashbacks of the assault and would barely eat. *See* [N.T., 7/18-20/23,] at 50:1-50:12. Additionally, [T.M.] testified that before the incident[,] T.B. was a "social butterfly" and never wanted to be home. *See id.* at 51:13-51:18. [T.M.] testified that after the incident, however, T.B. became not the type of person who wants to go out anymore; T.B. no longer wants to be around male figures; [and] T.B. becomes very frantic or shuts down when she is around a group of people…. *See id.* at 50:25-51:7.

It is difficult to imagine that a fair and impartial jury would conclude that T.B. made up the allegations against [Appellant] when her personality changed so drastically, according to multiple accounts, after the time of the alleged incident. Rather, it is much more believable that T.B.'s behavior and personality changed as a result of the incident.

Further, the Commonwealth's forensic DNA expert [] Hiester's testimony supports the conclusion that [Appellant] committed the assault. Mr. Hiester testified that [Appellant] can be included as a potential contributor to the DNA sample taken from a stain on the left buttocks area of the pink leggings T.B. was wearing when the incident occurred, and that it's much more likely that [Appellant] was a contributor. *See id.* at 136:4-136:13; 137:13-140:15. Specifically, Mr. Heister stated that the DNA profile obtained from the leggings is "460,000 times more likely if it originated from [T.B.], [Appellant], and two unknown unrelated individuals than if it had originated from [T.B.] and three unknown unrelated individuals." *Id.* at 140:2-140:8. This evidence supports the conclusion that [Appellant] committed the assault[.] …

Additionally, [Nurse] Townsend, … who conducted the SANE examination on [T.B.] following the incident, testified that T.B. displayed redness on … the area directly below the vaginal opening[], which she found was out of the ordinary. *See id.* at

- 19 -

91:13-92:7. This further supports the conclusion that [Appellant] committed the crimes for which he was found guilty….

Even if it was a fact that [Appellant] was not a contributor to the [] DNA profile, the jury's guilty verdicts would not have been so contrary to the evidence that it would shock one's sense of justice. The Commonwealth introduced voluminous testimony strongly evidencing that [Appellant] committed the crimes for which he was found guilty. [Appellant's] testimony, and that of [the defense's other witnesses, does] not outweigh the evidence presented against [Appellant] by any stretch of the imagination. Therefore, the [trial c]ourt does not find that the jury's verdicts were against the weight of the evidence.

Trial Court Opinion, 5/9/24, at 5-7 (citations modified).

Our review discloses the trial court's reasoning is supported by the record and free of legal error. Appellant essentially asks this Court to reweigh the evidence presented at trial and reassess the credibility of the witnesses. This we cannot do. *See Commonwealth v. Sanchez*, 262 A.3d 1283, 1288 (Pa. Super. 2021) ("Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court."); *Commonwealth v. Scott*, 146 A.3d 775, 778 (Pa. Super. 2016) (stating an appellate court will not disturb the fact-finder's credibility findings that are supported by evidence of record).

The jury, as fact-finder, was free to believe all, part, or none of the testimony presented, and credibility determinations are solely within its province. *Commonwealth v. McClellan*, 178 A.3d 874, 878 (Pa. Super.

- 20 -

2018). The jury ostensibly credited the testimony proffered by T.B. and the Commonwealth's witnesses, and discredited Appellant's self-serving account.

Moreover, the record belies Appellant's claim that K.A.'s trial testimony rendered the verdicts against the weight of the evidence. Although K.A. testified she did not witness the sexual assault as she was asleep, N.T., 7/18-20/23, at 228, she stated she "woke up to [T.B.] crying around 5[:00 a.m.,]" and T.B. "told [K.A.] what happened[. K.A. responded] that we have to tell someone." *Id.* at 227. Finally, the fact that Appellant presented witnesses, including Sharp, who testified to his good character does not undermine confidence in the jury's verdicts.

Based on the foregoing, we discern no abuse of the trial court's discretion in its denial of Appellant's PSM and challenge to the weight of the evidence. Appellant's second issue does not merit relief.

In his third and final issue, Appellant claims the trial court improperly 1) denied his motions for a mistrial made at trial; and 2) overruled trial counsel's objection to the admissibility of Perry's testimony. *See* Appellant's Brief at 12-14. We recite Appellant's complete substantive argument supporting his claim:

> [T]here were three key prejudicial events: (1) [the Commonwealth's] reference to Appellant's first trial which ended without a verdict (N.T.[, 7/18-20/23, at] 37 …), (2) improper witness bolstering with the testimony of [] Perry ([*Id.*] at 101 …) and (3) the prosecutor's mentioning of the possible penalties

faced by Appellant ([*Id.*] at 218-219 …).[13]  Collectively, these three occurrences deprived Appellant of a fair trial and a new trial should be granted.  … [T]he three prejudicial events amounted to an unfair emotional edge to the [Commonwealth's] case, and an unfair bolstering of … T.B.  The [three occurrences] led to Appellant being portrayed as the wrong-doer, pre-verdict and sympathy garnered [*sic*] for T.B.; there was no reciprocal testimony on Appellant's side concerning his emotional well-being.  The jury heard about the previous trial, and the possible penalties for Appellant[,] leading it to a belief that it should or needed to convict him for the protection of T.B.[,] who was suffering from PTSD.

*Id.* at 13-14 (footnote added).

Before reaching the merits of Appellant's claims, we address whether he properly preserved them.  "Each distinct issue in the argument section of a brief must, at a minimum, contain 'citations of authorities as are deemed pertinent.'"  *Commonwealth v. Pi Delta Psi, Inc.*, 211 A.3d 875, 883 (Pa. Super. 2019) (quoting Pa.R.A.P. 2119(a)).  Our Supreme Court has stated,

[w]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.  It is not the obligation of an appellate court to formulate [an] appellant's arguments for him.  Indeed, we are neither obliged, nor even particularly equipped, to develop an argument for a party.  To do so places the Court in the conflicting roles of advocate and neutral arbiter.  The Court is left to guess at the actual complaint that is intended by the party.

*Commonwealth v. Armolt*, 294 A.3d 364, 377 (Pa. 2023) (citations and internal quotation marks omitted); *see also Pi Delta Psi*, 211 A.3d at 884

---

[13] We hereinafter refer to the three events Appellant enumerated as the "three occurrences."

- 22 -

("When an appellant's argument is underdeveloped, we may not supply it with a better one."). *Id.* "[**M**]**ere issue spotting without sufficient analysis or legal support precludes appellate review**." *Armolt*, 294 A.3d at 379 (emphasis added; citation omitted); *In re S.T.S., Jr.*, 76 A.3d 24, 42 (Pa. Super. 2013) (same).

Instantly, Appellant's single paragraph of substantive argument on this issue (which has three subsidiary issues) is 1) devoid of citation to or discussion of relevant legal authority; and 2) woefully underdeveloped.[14] Appellant's argument consists of "mere issue spotting without sufficient analysis or legal support[.]" *Armolt*, 294 A.3d at 379 (citation omitted). Accordingly, Appellant waived his final claim. *Id.* at 377; *Commonwealth v. McMullen*, 745 A.2d 683, 689 (Pa. Super. 2000) (appellant waived issue where the argument he advanced in support "consists of a one paragraph 'argument' with virtually no citation to relevant statutory authority or case law."); *see also Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 781 (Pa. Super. 2015) (*en banc*) (stating that when an appellant cites no authority to support his argument, "this Court is inclined to believe there is none." (citations omitted)).

---

[14] Appellant's brief also does not comply with Pa.R.A.P. 2119(a), which requires the appellant to divide the argument section into separate sections for each issue set forth in the statement of questions presented, with distinctive headings for each such section.

Nevertheless, even if Appellant's issue was not waived, we would determine it does not merit relief. We address in turn each of the three occurrences Appellant complains of.

Appellant first claims the trial court erred in denying his motion for a mistrial made in response to purported "reference[s] to Appellant's first trial[.]" Appellant's Brief at 13.

"It is well-settled that the review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion." *Commonwealth v. Chamberlain*, 30 A.3d 381, 422 (Pa. 2011) (citation omitted); *see also Commonwealth v. Johnson*, 107 A.3d 52, 77 (Pa. 2014) ("The trial court is in the best position to assess the effect of an allegedly prejudicial statement on the jury, and as such, the grant or denial of a mistrial will not be overturned absent an abuse of discretion." (citation omitted)). "A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." *Chamberlain*, 30 A.3d at 422 (citation and quotation marks omitted); *see also Commonwealth v. Laird*, 988 A.2d 618, 638 (Pa. 2010) (observing a mistrial is an "extreme remedy").

"[A] mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice." *Commonwealth v. Johnson*, 107 A.3d 52, 53 (Pa. 2014); *Commonwealth v. Leap*, 222 A.3d

- 24 -

386, 392 (Pa. Super. 2019) (same). "The law presumes that the jury will follow the instructions of the court." ***Commonwealth v. Spotz***, 18 A.3d 244, 296 (Pa. 2011) (citation omitted).

Here, the Commonwealth presented testimony at trial from the investigating police officer assigned to the case, William Yoder (Officer Yoder).[15]   During direct examination, the prosecutor moved for admission of certain exhibits Officer Yoder discussed during his testimony.  N.T., 7/18-20/23, at 37; ***see also id.*** at 28-29 (the prosecutor stating, "[j]ust for the record[,] all these exhibits have been furnished to [trial] counsel in a previous hearing[,]" and the prosecutor is "retaining the number from the original hearing.").  Trial counsel requested a sidebar and moved for a mistrial:

> [Trial counsel]: Your Honor, for the sake of preserving the record I would take this opportunity to ask for a mistrial.  [The prosecutor] multiple times referred to those exhibits as being provided at a previous hearing with [a] previous numbering system.  I'm not sure how the jury could not infer at this point that this isn't a retrial.
>
> THE COURT: [Commonwealth?]
>
> [Commonwealth]: I don't think the jury can infer that.  We all discussed this in chambers[.  The exhibits] could be referred to as previous hearing.
>
> ….
>
> [Trial counsel]: Your Honor, it's been the exact same exhibits with the exact same numbering system.
>
> ….

---

[15] The substance of Officer Yoder's testimony is not relevant to this appeal.

THE COURT: … I want to make sure I understand [trial counsel's] objection. I think in chambers I indicated if you're going to refer to any other matter it would be a prior proceeding. I think we talked about that in chambers. [Trial counsel has] a concern now that [the prosecutor] talked about markings from another hearing….

[Trial counsel]: That and [in] combination with the fact [that the Commonwealth is] using [the] same numbering system[,] that's enough information for the jury to infer that this is not the first time that this [trial] has happened.

*Id.* at 37-38.

The trial court denied Appellant's mistrial motion, reasoning in relevant part as follows:

**It wasn't called a trial by** [**the prosecutor**]. So I would just caution, again, that we met in chambers and [the court] felt the better word was proceeding, prior proceeding because I think that would not cause jury to think that there had been a full jury trial in this matter. So I think it's harmless error, but I will caution the parties to use the word proceeding and [] not use it a lot. And I feel that **if I give some kind of cautionary instruction at this point**[,] **it's just going to draw more attention to it.** So I think it's best left unsaid…. I don't know that a jury is going to put two and two together, believe that [Appellant has] had a full trial and secondly that it [resulted in] a hung jury.

*Id.* at 40 (emphasis added).

Counter to Appellant, the Commonwealth contends the trial court correctly denied Appellant's mistrial motion. *See* Commonwealth Brief at 26-27. According to the Commonwealth,

the word "hearing" or "proceeding" does not equate or infer any prior finding of guilt or even that a trial occurred. The matter could have referred to a preliminary hearing, bail motion, suppression motion or any other matter brought before a [c]ourt.

- 26 -

*Id.* at 27.

In its opinion, the trial court determined it properly exercised its discretion in denying Appellant's mistrial motion:

> In [**Commonwealth v. Lark**, 221 A.3d 287, 3856 EDA 2017 (Pa. Super. 2019) (unpublished memorandum)],[16] a trial witness briefly mentioned the defendant's prior trial during testimony. *Id.* [(unpublished memorandum] at 35[)]. Like here, the prior trial in **Lark** resulted in a mistrial and the defendant argued there that the mention of the word "trial" by the witness "necessarily conveyed to the jury that Lark was found guilty at the prior proceeding." *Id.* The Superior Court found on appeal that it was not an abuse of discretion for the trial judge to deny the defendant's motion for a mistrial, holding that even if the witness's reference to the defendant's prior proceeding was an error, it was harmless and could not have affected the verdict. *Id.* at 35. **Here, the prosecutor did not even mention the word "trial**[,]" but merely stated the exhibits were used at a **prior proceeding**. The [trial c]ourt fails to see how this could have any prejudicial effect on [Appellant,] as **it could not have affected the verdict.**

Trial Court Opinion, 5/9/24, at 2-3 (emphasis and footnote added).

Our review discloses the trial court's reasoning is supported by the law and the record, and we discern no abuse of its discretion. *See id.* The trial court did not err in denying Appellant's motion for a mistrial.

Appellant next claims the trial court erred in denying trial counsel's objection at trial to "improper witness bolstering with the testimony of [] Perry," T.B.'s therapist. Appellant's Brief at 13; *see also id.* at 14 (pointing

---

[16] Pursuant to Pa.R.A.P. 126(b), this Court's unpublished memorandum decisions filed after May 1, 2019 may be cited for their persuasive value. This Court decided **Lark** on August 19, 2019.

out Perry testified to T.B.'s PTSD diagnosis). Appellant complains the defense, unlike the Commonwealth, had "no reciprocal testimony on Appellant's side concerning his emotional well-being." *Id.* at 13.

We are mindful of our standard of review: "When we review a trial court's ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law." **Commonwealth v. Jackson**, 283 A.3d 814, 817 (Pa. Super. 2022) (citation omitted); **see also Commonwealth v. Mendez**, 74 A.3d 256, 260 (Pa. Super. 2013) (stating the "standard of review for a trial court's evidentiary rulings is narrow" (citation omitted)).

"The threshold inquiry with admission of evidence is whether evidence is relevant." **Jackson**, 283 A.3d at 817 (citing **Commonwealth v. Collins**, 888 A.2d 564, 577 (Pa. 2005)). Evidence is relevant if "it has the tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Pa.R.E. 401(a)-(b). "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402.

Instantly, prior to Perry's trial testimony, trial counsel objected to the admissibility of the testimony at sidebar, claiming it was "unduly cumulative" and irrelevant. N.T., 7/18-20/23, at 102. The trial court overruled the objection, and noted that it would issue a cautionary instruction concerning

the limited purpose for which the jury could consider Perry's testimony. *Id.* at 103.

In its opinion, the trial court determined that it did not err in overruling Appellant's objection to Perry's testimony:

Perry testified that T.B. was diagnosed by a child psychologist, who works with Ms. Perry, with Major Depressive Disorder and [PTSD] after the incident occurred. Ms. Perry further testified that she holds therapy sessions with T.B., inferably to help T.B. cope with the disorders she suffers from due to [Appellant's] assault. The testimony was not unduly cumulative as there was little testimony taken regarding the disorders T.B. suffered from[,] and **Ms. Perry had first-hand knowledge of T.B.'s clinical diagnoses and treated T.B. for them. The testimony was relevant because T.B. was diagnosed after the incident was alleged to have taken place, which can tend to show that T.B. suffered from the disorders as a result of the incident, supporting the notion that the assault occurred.** The [trial c]ourt fails to see how "emotional manipulation" was involved. (*See* [N.T., 7/18-20/23, at] 101:25-107:7).

Trial Court Opinion, 5/9/24, at 9-10 (emphasis added).

The trial court's reasoning is supported by the record and the law, and we agree with its determination. *See id.* Further, there is no merit to Appellant's bald claim that the admission of Perry's testimony somehow violated his rights, where the defense presented no evidence regarding "his emotional well-being." Appellant's Brief at 13. We conclude the trial court properly exercised its discretion in denying Appellant's objection to Perry's relevant testimony.

In his final claim, Appellant argues the trial court erred in denying trial counsel's motion for a mistrial based on prosecutorial misconduct.

Specifically, Appellant challenges the prosecutor's comments regarding "the possible penalties for Appellant[,] leading [the jury] to a belief that it should … convict him for the protection of T.B."  Appellant's Brief at 13.

Regarding claims of prosecutorial misconduct, it is well settled that

the prosecutor is allowed to vigorously argue his case so long as his comments are supported by the evidence or constitute legitimate inferences arising from that evidence.  In considering a claim of prosecutorial misconduct, our inquiry is centered on whether the defendant was deprived of a fair trial, not deprived of a perfect one.  Thus, a prosecutor's remarks do not constitute reversible error unless their unavoidable effect was to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict.

*Commonwealth v. Bozic*, 997 A.2d 1211, 1229 (Pa. Super. 2010) (citations, brackets, and ellipses omitted).  "Any challenge to a prosecutor's comment must be evaluated in the context in which the comment was made."  *Commonwealth v. Reid*, 259 A.3d 395, 429 (Pa. 2021) (citation omitted).

At trial, the prosecutor cross-examined Appellant whether he understood that, if convicted, he could "serve some jail time?"  N.T., 7/18-20/23, at 215.  The trial court then met with the parties at sidebar, and warned the prosecutor "to be very cautious" concerning this line of questioning.  *Id.* at 217; *see also id.* at 215-16 (trial court's sidebar discussion with the parties).  However, the trial court permitted the prosecutor to question Appellant as to his understanding that, if convicted, he could "lose [his] liberty," "be put on probation or supervision," and "required to register as [a sex] offender?"  *Id.* at 217.  The prosecutor also asked Appellant if he agreed

that he has "a vital interest in the outcome of the case?" *Id.* Appellant replied, "In a way, yes." *Id.* Trial counsel moved for a mistrial. *Id.* at 219-20 (arguing the prosecutor's line of questioning was "close to the line of burden shifting prejudice to the jury."). The trial court denied trial counsel's motion and stated that the court would instruct the jury to not consider penalties Appellant could face if found guilty. *Id.* at 220-21.

The trial court issued the following cautionary instruction:

> Ladies and gentlemen, you're going to hear this later when I give you my final instructions. **The possible penalties that could be imposed is not for your consideration.** [The] Commonwealth has the burden of proving each and every element of the offenses for which the defendant has been charged, they must be proven beyond a reasonable doubt. I will impose any penalties **if** [Appellant] should be found guilty, and **I do not want you to concern yourself with that penalty because that alone is for the Judge and *we have made no determination yet until you the jury pronounce unanimously that you have reached a conclusion.***

*Id.* at 221 (emphasis added; punctuation modified).

Later, the prosecutor stated during his closing argument that Appellant "could possibly serve incarceration, he could possibly be put on supervision," and "have to register for Megan's [L]aw." *Id.* at 405. Trial counsel again moved for a mistrial at sidebar, complaining the prosecutor improperly "commented about potential sentence and possible incarceration." *Id.* at 409. The trial court denied the mistrial motion, and stated that it would again instruct the jury "that the penalty phase is none of their concern." *Id.*

The trial court instructed the jury as follows in its final charge:

Your determination of the facts in this case should not be based upon empathy or prejudice or **penalties** or anything else relative to [Appellant] nor as to the crime that has been charged. … The mere fact that [Appellant has] been arrested and charged with a crime is not evidence of guilt. Furthermore, [Appellant] is presumed to [be] innocent….

*Id.* at 410-11 (emphasis added). The trial court further instructed,

You should not disbelieve [Appellant's] testimony merely because he is the defendant. In weighing his testimony, however, you may consider the fact that he has [a] vital interest in the outcome of this trial.

*Id.* at 413.

In its opinion, the trial court found that the above jury "instructions cured any potential prejudice [Appellant] would have suffered due to the prosecutor's comments" concerning potential penalties Appellant could face. Trial Court Opinion, 5/9/24, at 10. Accordingly, the court concluded that it did not abuse its discretion in denying Appellant's motion for a mistrial. *Id.*

The Pennsylvania Uniform Standard Jury Instructions on witness credibility invite the jury to consider, when evaluating a witnesses' credibility: "Did the witness have any interest in the outcome of the case, bias, prejudice, or other motive that might affect his testimony?" Pa. SSJI (Crim.) § 4.17(e); *see also Commonwealth v. Dunkle*, 602 A.2d 830, 844 (Pa. 1992), *superseded by statute as stated in Commonwealth v. Jones*, 240 A.3d 881, 896 (Pa. 2020)). Moreover, Uniform Jury Instruction 3.09, pertaining to credibility of the defendant, provides: "In weighing [a defendant's] testimony, [] you may consider the fact that he has a vital interest in the outcome of this

trial. You may take the defendant's interest into account, just as you would the interest of any other witness…." Pa. SSJI (Crim.) § 3.09(2).

This Court has stated that "[i]t has long been acceptable practice in Pennsylvania to permit the trial court to instruct the jury as to the importance of an accused's interest in the outcome of a criminal proceeding, and to take this into consideration as a factor bearing on his credibility as a witness." *Commonwealth v. Harley*, 418 A.2d 1354, 1359 (Pa. Super. 1980) (citations omitted). It is entirely proper, in determining credibility, for "the factfinder [to] consider that the defendant had a vital interest in the outcome of the trial." *Commonwealth v. Rodriguez*, 462 A.2d 1310, 1315 (Pa. Super. 1983) (citation omitted).

Based on the foregoing, we discern no abuse of the trial court's discretion in its denial of Appellant's motion for a mistrial. The court's repeated cautionary instructions to the jury cured any possible prejudice to Appellant resulting from the prosecutor's comments about potential penalties. Moreover, the comments did not deprive Appellant of a fair trial. We are persuaded by the Commonwealth's argument that

> [e]stablishing through examination of the Appellant that he is aware of the possible penalties in a very general way is directly relevant and material for the jury to assess his interest in the outcome, bias, prejudice or other motive. In no way does it infer or invite the jury to determine guilt or innocence….

Commonwealth Brief at 22-23. Accordingly, Appellant's final issue would merit no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 01/28/2025